998 F.2d 1559
 David Anthony DOYLE, Plaintiff-Appellant,
v.
The OKLAHOMA BAR ASSOCIATION; James M. Tisdale,
individually and as Chairman, Professional Responsibility
Commission, Oklahoma Bar Association; Paul M. Vassar,
individually and as Member, Professional Responsibility
Commission, Oklahoma Bar Association; Dan Murdock,
individually and as General Counsel, Oklahoma Bar
Association; Thomas C. Riesen, individually and as
Assistant General Counsel, Oklahoma Bar Association; Marvin
C. Emerson, individually and as Executive Director, Oklahoma
Bar Association, Defendants-Appellees.
 No. 92-6104.
 United States Court of Appeals,
Tenth Circuit.
 July 19, 1993.
 
 Sylvia Marks-Barnett, Oklahoma City, OK, for plaintiff-appellant.
 George F. Shorts (Cynthia L. Sparling with him on the briefs), Short Barnes Wiggins Margo & Adler, Oklahoma City, OK, for defendants-appellees.
 Before MOORE, GODBOLD,* and ANDERSON, Circuit Judges.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 David Anthony Doyle appeals the dismissal of his civil rights action under 42 U.S.C. § 1983 against the Oklahoma Bar Association (the "Bar"), its executive director, general counsel, assistant general counsel, and two members of the Professional Responsibility Commission (the "PRC"). Doyle brought this action after he became dissatisfied with the way Bar counsel and the PRC handled a grievance he had filed with the Bar against his ex-wife's lawyer. His complaint[1] is based on the theory that he has federal constitutional rights to have a lawyer investigated after a grievance is filed, to have a meaningful investigatory process for grievances so as to keep the profession respectable, to have the defendants comply with the Oklahoma Supreme Court's Rules Governing Disciplinary Proceedings, and to have defendants monitor lawyers so they will not make material misrepresentations in court. Complaint p 21, Appendix to Appellant's Brief at 9.
 
 
 2
 The district court dismissed Doyle's complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failing to allege a constitutionally protected right, among other things, 787 F.Supp. 189. We agree and affirm.
 
 BACKGROUND
 
 3
 The Oklahoma Supreme Court (the court) has exclusive jurisdiction in all matters involving the licensing and discipline of lawyers in Oklahoma. Okla.Stat.Ann. tit. 5, Ch. 1, App. 1-A, R. 1.1. In the exercise of that authority the court has promulgated rules governing lawyer discipline (the Rules). Id. The Rules, among other things, address the filing, consideration, and investigation of grievances against lawyers, through the office of the General Counsel of the Bar, and the PRC, a body consisting of lawyers and nonlawyers.
 
 
 4
 In the exercise of its sole discretion, the PRC may cause a formal complaint against a lawyer to be filed with the court, charging specified violations of the Code of Professional Responsibility or other prescribed standards of professional conduct. Hearings (essentially a trial and open to the public) on the formal complaint take place before three-member panels selected from the Professional Responsibility Tribunal (Tribunal), another body created by the Rules and consisting of both lawyers and nonlawyers. The hearing panel has no power either to impose or refuse to impose discipline. It submits to the court findings, conclusions and recommendations, which are advisory only and in no way binding on the court. Thereafter, the court, in its sole discretion, makes such findings of its own and takes such action with respect to the charges against the lawyer as it deems appropriate, including dismissal of the proceedings, imposition of some type of discipline, or some other action. Okla.Stat.Ann. tit. 5, Ch. 1, App. 1-A, R. 6.16; State v. Miskovsky, 824 P.2d 1090, 1093 (Okla.1991).
 
 
 5
 The system relating to lawyer discipline in Oklahoma, therefore, is prosecutorial in nature (discretion to investigate and to charge) up to and through the filing of a formal complaint against a lawyer at the direction of the PRC. After such a complaint is filed the process proceeds to the hearing, or trial, stage which is adjudicatory in nature or, more precisely, quasi adjudicatory, since the result of the hearing proceedings is advisory and nonenforceable. See Tweedy v. Oklahoma Bar Ass'n, 624 P.2d 1049, 1054-55 (Okla.1981). As indicated above, only the supreme court can discipline. See Miskovsky, 824 P.2d at 1093.
 
 
 6
 The allegations contained in Doyle's complaint center on the handling of Doyle's grievances at the prosecutorial level or, as he claims, a stage even prior to that--grievance intake procedures.
 
 
 7
 On January 26, 1990, Doyle sent a written grievance to the Bar complaining about the conduct of his ex-wife's lawyer. The complaint filed by Doyle in this action attaches communications received by him in the matter but omits the ones he sent, including the grievance in question; however, we gather from paragraphs 6 and 22 of the complaint that Doyle lost a child custody proceeding in state court, following which he complained to the Bar that his ex-wife's lawyer committed perjury "which resulted in judgments and orders adverse to [Doyle]." Complaint p 6, Appendix to Appellant's Brief at 3.
 
 
 8
 Under the Rules, when a written grievance is filed against a lawyer the General Counsel of the Bar may proceed in the alternative as follows:
 
 
 9
 RULE 5.2. INVESTIGATIONS. After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete, or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance ... upon the lawyer....
 
 
 10
 (emphasis added). As the Rule indicates, the General Counsel has authority to screen out those grievances which are inadequate, incomplete, or insufficient to warrant further attention, with notice to that effect to the person who filed the grievance.[2] That authority was exercised with respect to Doyle's complaint. On February 7, 1990, twelve days after Doyle filed his grievance, the Assistant General Counsel of the Bar wrote the following letter to Doyle:
 
 Dear Dr. Doyle:
 
 11
 We are in receipt of your complaint against the above-referenced attorney.
 
 
 12
 The Oklahoma Bar Association understands your situation, however, it is our opinion that we are not in a position to resolve this matter for you.
 
 
 13
 The General Counsel's Office deals with grievances alleging attorney conduct which violates the Oklahoma Rules of Professional Conduct. An attorney's conduct may seem inappropriate but it may not necessarily rise to the level of a legal ethics violation.
 
 
 14
 I am hopeful that this matter will be promptly resolved to your satisfaction.
 
 
 15
 Exhibit B to Complaint, Appendix to Appellant's Brief at 18 (emphasis added).
 
 
 16
 Doyle responded with two letters to the General Counsel (neither of which was attached as an exhibit to the complaint) apparently complaining about the Assistant General Counsel's disposition of Doyle's grievance and demanding another result. The General Counsel wrote back saying he would look into the way the grievance was handled and get back to Doyle in a week. That contact did not occur. When Doyle did not hear from the General Counsel by August 1990, he filed a grievance against him. That grievance, filed with the PRC, alleged misconduct by counsel in carrying out his duties under Rule 3.2(b), which provides as follows:
 
 
 17
 RULE 3.2. DUTIES. The General Counsel of the Oklahoma Bar Association shall have the following powers and duties in the are of discipline under these Rules:
 
 
 18
 ....
 
 
 19
 (b) To investigate all matters involving possible misconduct or alleged incapacity of any lawyer called to the General Counsel's attention by complaint or otherwise;
 
 
 20
 About three weeks later Doyle, having heard nothing from the PRC, wrote to the Vice Chief Justice of the Oklahoma Supreme Court apparently complaining about the handling of both of his grievances. The justice responded by return mail, with a copy to the General Counsel, informing Doyle that he was not permitted to correspond directly with the Supreme Court on such matters, and enclosing explanatory materials. Counsel immediately reported by letter to the justice, describing the status of Doyle's grievance. The letter stated:
 
 Dear Justice Opala:
 
 21
 I have enclosed a copy of my initial correspondence with Dr. David Doyle concerning his complaint. I have also spoken with Dr. Doyle over the telephone and regularly receive facsimile transmissions from him. Dr. Doyle may also be referred to a facsimile transmission sent to him after he received our initial letter. That review did not cause a change in our position.
 
 
 22
 I will cooperate with you and am available for further discussions regarding this matter if needed.
 
 
 23
 Exhibit E to Complaint, Appendix to Appellant's Brief at 21 (emphasis added). Doyle promptly amended his grievance against the General Counsel, alleging that counsel's report to the Vice Chief Justice constituted a violation of Rule 3.3. That Rule provides:
 
 
 24
 RULE 3.3. GRIEVANCES AGAINST THE GENERAL COUNSEL OF THE ASSOCIATION.
 
 
 25
 (a) Whenever a grievance is filed, or information is received by the Commission which could lead to the filing of a formal complaint against the General Counsel of the Association, the members of the Commission and the President and the Executive Director of the Association shall immediately be notified.
 
 
 26
 (b) The General Counsel shall disqualify himself from all further participation in the investigation and determination of the matter, and the chairman of the Commission, or in the event of the chairman's absence of inability to act, the vice-chairman, shall appoint a lawyer-member of the Commission, or the Commission shall retain outside counsel, to act in the place of the General Counsel in the investigation and determination of the matter, and in its subsequent prosecution, in the event formal proceedings before a panel of the Professional Responsibility Tribunal result.
 
 
 27
 The Executive Director of the Bar (to whom Doyle had written as well), and a member of the PRC, Paul M. Vassar, both responded to Doyle's latest filing, informing Doyle that the General Counsel had disqualified himself and that pursuant to Rule 3.3(b) Vassar had been appointed by the chairman of the PRC to act with respect to both of Doyle's grievances. Mr. Vassar informed Doyle that he would "conduct such investigation as I think the matter warrants." Exhibit G to Complaint, Appendix to Appellant's Brief at 23. Doyle then apparently proceeded to contact and threaten Vassar, who responded:
 
 Dear Sir:
 
 28
 On October 2, 1990, I advised you that as a lawyer-member of the Professional Responsibility Commission of the Oklahoma Bar Association, that I was conducting an investigation into the complaints that you had lodged with the Association. This investigation is ongoing and is being conducted in accordance with the Rules Governing Disciplinary Proceedings of the Association as promulgated by the Supreme Court of the State of Oklahoma. A copy of those Rules has been furnished to you by others.
 
 
 29
 I have read everything that you have submitted to the Association. I fully understand your complaints. If it is necessary for me to receive additional information from you, I will contact you. I specifically request that you do not contact me further unless I do so. I will not acknowledged (sic) receipt of any further communications from you unless I ask for them.
 
 
 30
 I view your letter of October 31, 1990, as an attempt to interfere and threaten my investigation. I will not tolerate such from you or anyone else. You are a member of the Bar. I suggest that you conduct yourself accordingly.
 
 
 31
 Exhibit H to Complaint, Appendix to Appellant's Brief at 24.
 
 
 32
 Doyle's complaint in this action asserts that Vassar's appointment violated Doyle's constitutional rights because Vassar had already reviewed Doyle's grievances and the investigations conducted by the General Counsel and Assistant General Counsel of the Bar, and had concluded that no further investigation was necessary. Complaint p 16, Appendix to Appellant's Brief at 7. The complaint also asserts that Doyle was wrongfully refused access to Vassar, and that Vassar's letter displayed an anti-member-of-the-public and anti-member-of-the-public-who-is-not-an-American animus, thus infecting the integrity of the investigatory process, stripping it "of fairness and procedural safeguards required by due process." Id. at 8, p 19. The complaint alleges that all of this violated rights conferred upon Doyle by the preamble to the Rules Creating and Controlling the Oklahoma Bar Association.
 
 
 33
 The complaint also accuses the Executive Director of the Bar and the defendant members of the PRC of failing to supervise the General Counsel so as to compel him to investigate the original grievance and notify Doyle of actions taken, prevent counsel from writing a status report letter to the Vice Chief Justice of the Oklahoma Supreme Court, and force counsel to disqualify himself more promptly than he did.
 
 
 34
 Due to the violation of these alleged constitutional rights, Doyle asserts in his complaint that he was damaged as follows: (1) he has been unsuccessful in his state court litigation because the lawyer about whom he complained was not disciplined; (2) he "suffers much anxiety and distress over attempts to secure access to the proper processing of the PRC and thereby some relief for his custody and visitation concerns"; (3) he has lost time from his business and practice as a barrister in Australia; (4) he has spent money and time traveling and instructing his lawyer; and (5) he has paid attorneys fees in his state court litigation because of the alleged misconduct of the lawyer he seeks to have disciplined by the Bar, and fees for pursuing his disciplinary grievance. For these alleged damages, Doyle seeks a joint and several judgment of $4 million against the defendants.
 
 STANDARD OF REVIEW
 
 35
 We review de novo the dismissal of a complaint under Fed.R.Civ.P. 12(b)(6), confining our review to the allegations of the complaint and taking them as true. See Ayala v. Joy Mfg. Co., 877 F.2d 846, 847 (10th Cir.1989). We are not obliged to consider the various allegations newly made by Doyle on appeal, since it is only the sufficiency of the complaint which is being reviewed.
 
 DISCUSSION
 
 36
 A. STANDING.
 
 
 37
 A threshold issue in this case--one not addressed by the parties or the court below--is whether Doyle has standing to bring this suit and this appeal. The issue of standing is jurisdictional in nature, thus requiring our examination both as to our own jurisdiction and that of the district court. See Alexander v. Anheuser-Busch Cos., 990 F.2d 536, 538 (10th Cir.1993) (and cases cited therein); Frank Rosenberg, Inc. v. Tazewell County, 882 F.2d 1165, 1168 (7th Cir.1989), cert. denied, 493 U.S. 1023, 110 S.Ct. 726, 107 L.Ed.2d 745 (1990).
 
 
 38
 "[S]tanding and the cause of action based on violation of civil rights" are easily confused. Dohaish v. Tooley, 670 F.2d 934, 936 (10th Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). Both "focus on the nature of the plaintiff's injury and the nature of the invasion of his alleged right." Id.
 
 
 39
 For standing to exist, the plaintiff must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). The injury must be "distinct and palpable," Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), as opposed to abstract, conjectural, or merely hypothetical. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1664-65, 75 L.Ed.2d 675 (1983); Frank Rosenberg, Inc. v. Tazewell County, 882 F.2d at 1168-69 (Plaintiff must have suffered "injury in fact" in order to satisfy the Article III requirement of justiciability.). Thus, one does not have standing to assert a violation of rights belonging to another, since the person entitled to a right is the only one who can be directly injured by its deprivation. See Warth, 422 U.S. at 499, 95 S.Ct. at 2205 (a litigant "must assert his own legal rights"); Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953).
 
 
 40
 Applying these principles, Doyle's complaint demonstrates on its face that he lacks standing. Essentially, he wanted a lawyer disciplined or at least greatly inconvenienced at the state level, and to use the result to somehow mount a collateral attack on a state court judgment. His complaint for damages rests on a core assertion that he was unconstitutionally deprived of these aims. As indicated above, the PRC acts in a prosecutorial capacity. Tweedy, 624 P.2d at 1052. As such it has full discretion to investigate, reinvestigate, weigh and reweigh actual or likely evidence, charge or not charge, and to reconsider and reverse or modify any decisions with respect to any of the foregoing at any time during the process. Id. at 1054-55. The sole discretion whether or not to file a formal complaint against a lawyer lies with the prosecutor, the PRC. Id.; Rule 5.3.
 
 
 41
 The United States Supreme Court has made it clear that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973). Accordingly, "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." Id. Similarly, in Leeke v. Timmerman, 454 U.S. 83, 102 S.Ct. 69, 70 L.Ed.2d 65 (1981), the Court, citing Linda R.S. as controlling, dismissed on standing grounds a § 1983 suit alleging improper interference with plaintiffs' attempt to have an arrest warrant issued against persons who allegedly beat them, causing injury. The Court noted the rule that the plaintiffs had no federal right to the prosecution of another; and, in addition, there was no guarantee the warrant would have issued or, if so, that the prosecutor would have exercised discretion to prosecute. Id. 454 U.S. at 86-87, 102 S.Ct. at 70-71.
 
 
 42
 Subsequently, this court dismissed a § 1983 civil rights action on standing grounds in Dohaish, stating:
 
 
 43
 The ordinary citizen does not have a general interest justifying a lawsuit based on the criminal prosecution or non-prosecution of another. Linda R.S. v. Richard D., 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973). Such a right is not recognized in the law and, indeed, it would be contrary to public policy to allow every private citizen to force the prosecutor to proceed with a case in pursuit of a private objective. The district attorney is sworn to uphold the law generally and does not have a duty to enforce the law for the purpose of providing satisfaction to a third person who has no direct legal interest.
 
 
 44
 Dohaish, 670 F.2d at 937.[3] See also Sattler v. Johnson, 857 F.2d 224, 226-27 (4th Cir.1988).
 
 
 45
 The fact is that the only one who stands to suffer direct injury in a disciplinary proceeding is the lawyer involved. Doyle has no more standing to insert himself substantively into a license-based discipline system than he has to compel the issuance of a license.
 
 
 46
 We hold that Doyle lacks standing to bring this appeal and this action. However, to eliminate any doubt which may arise due to the multiplicity and generality of Doyle's substantive due process claims, we elect to proceed to an alternate holding on the merits. See Daniels v. Williams, 474 U.S. 327, 339-40, 106 S.Ct. 662, 678, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring in the judgment); Curry v. Baker, 802 F.2d 1302, 1313 (11th Cir.), cert. denied, 479 U.S. 1023, 107 S.Ct. 1262, 93 L.Ed.2d 819 (1986); Trujillo v. Board of County Comm'rs of County of Santa Fe, 768 F.2d 1186, 1187 (10th Cir.1985).
 
 
 47
 B. FAILURE TO STATE A CLAIM UNDER § 1983.
 
 
 48
 In an action under 42 U.S.C. § 1983 the plaintiff must "state a claim for violation of [a] right[ ] secured to him under the United States Constitution." Siegert v. Gilley, --- U.S. ----, ----, 111 S.Ct. 1789, 1791, 114 L.Ed.2d 277 (1991).[4] See Baker v. McCollan, 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1979). Doyle's constitutional claim, as identified in his complaint, rests entirely on the Due Process Clause of the Fourteenth Amendment. Complaint p 21, Appendix to Appellant's Brief at 9; Appellant's Brief at 18.[5]
 
 
 49
 The Due Process Clause "is the source of three different kinds of constitutional protection." Daniels, 474 U.S. at 337, 106 S.Ct. at 677. First, it provides a "guarantee of fair procedure, ... referred to as 'procedural due process,' " in connection with any deprivation of life, liberty or property by a state. Id. This is "the most familiar office" of the Clause. Collins v. Harker Heights, --- U.S. ----, ----, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). Second, the Clause contains a substantive component "that protects individual liberty against 'certain government actions regardless of the procedures used to implement them.' " Id. (quoting Daniels, 474 U.S. at 331, 106 S.Ct. at 665). This substantive component is referred to as substantive due process. Id. Third, the Clause incorporates the specific protections of most of the Bill of Rights against the states. These, too, are referred to as "substantive" rights, and are comprised within the "liberty" provision of the Clause. Planned Parenthood of S.E. Pa. v. Casey, --- U.S. ----, ----, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674 (1992). See Daniels, 474 U.S. at 337, 106 S.Ct. at 677; Griffin v. Strong, 983 F.2d 1544, 1546 (10th Cir.1993); Miller v. Campbell County, 945 F.2d 348, 352 (10th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1174, 117 L.Ed.2d 419 (1992).
 
 
 50
 Doyle alternatively invokes both substantive and procedural due process protections on the same facts, Appellant's Brief at 10-24, but the complaint does not fairly raise any claims under the incorporated provisions of the Bill of Rights. In sum, he argues that "the right to require a state bar to process a request for the investigation of lawyers, once the state bar accepts the grievance, according to the Rules of the state bar is a right guaranteed by the Constitution of the United States." Appellant's Brief at 10-11. We hold that it is not.
 
 
 51
 The Sixth Circuit addressed and flatly rejected a strikingly similar claim in Saier v. State Bar of Michigan, 293 F.2d 756 (6th Cir.), cert. denied, 368 U.S. 947, 82 S.Ct. 388, 7 L.Ed.2d 343 (1961). It held that "the right to require the State Bar to process Appellant's request for an investigation of certain lawyers is not a right guaranteed by the Federal Constitution." And, it affirmed the district court's dismissal of the complaint for failure to state a cause of action. Id. at 761. The district court in this case agreed with the holding in Saier, and so do we. Doyle's attempts to distinguish Saier, Appellant's Brief at 11-12, all ignore the clear reasoning and holding of the court, and--as with all of Doyle's arguments--evidence a total lack of comprehension of rights protected under the Due Process Clause.
 
 
 52
 1. Substantive Due Process.
 
 
 53
 Fairly analyzed, Doyle's argument is that the Federal Constitution imposes a duty on the defendants to do various things for him (investigate and process his grievance, somehow help him alter state court judgments by filing a formal disciplinary complaint against a lawyer, prevent perjurious statements in court, and so on), or to someone else (investigate and/or commence disciplinary proceedings against a lawyer). Substantive due process rights do not remotely relate to such claims. Substantive rights refer to "substantive liberties of the person," Casey, --- U.S. at ----, 112 S.Ct. at 2808, such as "personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education." Id. at ----, 112 S.Ct. at 2807. Additionally, the Clause acts substantively to restrain the state from "the 'affirmative abuse of power.' " DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 196, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989) (quoting Parratt v. Taylor, 451 U.S. 527, 549, 101 S.Ct. 1908, 1920, 68 L.Ed.2d 420 (1981) (Powell, J., concurring in result)); see Daniels, 474 U.S. at 331, 106 S.Ct. at 665; Davidson v. Cannon, 474 U.S. 344, 347-48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). That includes the exercise of government power which is "conscience shocking, in a constitutional sense." Collins, --- U.S. at ----, 112 S.Ct. at 1063. See, e.g., Rochin v. California, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952) (stomach pumping); Ingraham v. Wright, 430 U.S. 651, 674, 97 S.Ct. 1401, 1414, 51 L.Ed.2d 711 (1977) (excessive corporal punishment of student); Garcia v. Miera, 817 F.2d 650, 656 (10th Cir.1987) (corporal punishment of student "so grossly excessive as to be shocking to the conscience...."), cert. denied, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988).
 
 
 54
 Substantive due process rights do not encompass a right to compel a state to do something for someone not under some form of custody or restraint, and certainly not to compel the type of actions envisioned in Doyle's complaint. See, e.g., Collins, --- U.S. at ----, 112 S.Ct. at 1071; DeShaney, 489 U.S. at 198, 109 S.Ct. at 1005; Maldonado v. Josey, 975 F.2d 727, 729-30 (10th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1266, 122 L.Ed.2d 662 (1993). It hardly merits mentioning because it is so obvious, that the same is true with respect to a claim that the state ought to do something to someone else. Cf. Linda R.S., 410 U.S. at 618-19, 93 S.Ct. at 1149; Leeke, 454 U.S. at 86-87, 102 S.Ct. at 70-71; Sattler, 857 F.2d at 227; Dohaish, 670 F.2d at 936-37. Doyle states no substantive due process claim.[6]
 
 
 55
 2. Procedural Due Process.
 
 
 56
 As indicated above, procedural due process does not prevent the state from depriving an individual of liberty or property. It only requires that a fair procedure be provided for the deprivation. The threshold requirement is a sufficient allegation by the plaintiff that the plaintiff possesses a liberty or property interest.
 
 
 57
 A property interest must be specific and presently enforceable. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must have a legitimate claim of entitlement to it." Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The only attempts made by Doyle to identify a property interest of which he was allegedly deprived, arise for the first time in his brief on appeal. Appellant's Brief at 20-22. He argues: (1) that, like a driver's license, the state issued him a license to complain, then revoked it when his grievance was not processed properly; (2) that if the lawyer was disciplined Doyle might be "reimbursed" by the Client Security Fund, or the Supreme Court might order "restitution;" and (3) if the lawyer was disciplined and, as a result, sought reinstatement, "restitution" might be required. These assertions of property rights (or "liberty" interests: the brief is not specific) can only be described as ludicrous. Neither Doyle's complaint nor his newly-advanced arguments allege a constitutionally cognizable property interest.
 
 
 58
 "[A] state creates a protected liberty interest by placing substantive limitations on official discretion." Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). "[A]n individual claiming a protected [liberty] interest must have a legitimate claim of entitlement to it." Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 459, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (emphasis added). An abstract desire or unilateral hope do not establish a protected interest. Id. "The most common manner in which a State creates a liberty interest" is not only "by establishing 'substantive predicates' to govern official decisionmaking ...," but "by mandating the outcome to be reached upon a finding that the relevant criteria have been met." Id. at 462, 109 S.Ct. at 1909 (emphasis added).
 
 
 59
 The types of state created liberty interests asserted by Doyle are: (1) those relating to compliance by the general counsel and PRC with the Rules; (2) the policies and aims stated in the preamble to the rules creating the Bar (and other preambles referred to on appeal); (3) the right to have the Bar monitor attorneys so they will not make misrepresentations in court; and (4) state constitutional guarantees (Okla. Const., art. 2, §§ 6 and 7).[7] Nothing in these claims identifies an Oklahoma statute, rule, regulation, preamble, or anything else which requires that "a particular outcome must follow" if certain predicates are met. Thompson 490 U.S. at 463, 109 S.Ct. at 1910 (emphasis added). That is, if investigations were conducted, disqualifications accomplished, no letter written to the Vice Chief Justice, outside counsel appointed, notices given, Vassar not involved, and so on, no particular outcome was mandated by the Rules, preambles, or state constitution. The PRC still retained the sole discretion to charge (and to define the charge), and multiple levels of discretion followed even if a formal complaint was filed. The fact that Doyle filed a grievance guaranteed him nothing under state law by way of a certain outcome with respect to the discipline or lack of discipline of another person.
 
 
 60
 In short, Doyle has asserted nothing more than a right to process. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." Olim, 461 U.S. at 250, 103 S.Ct. at 1748. The mere expectation of receiving a state afforded process does not itself create an independent liberty interest protected by the Due Process Clause. Id. at 250 n. 12, 250-51, 103 S.Ct. at 1748 n. 12, 1748; Velasco-Gutierrez v. Crossland, 732 F.2d 792, 798 (10th Cir.1984).
 
 
 61
 3. Summary.
 
 
 62
 The Rule stated above, that there is no constitutional right to have someone else prosecuted or disciplined, includes the fact that the investigatory powers conferred by the Oklahoma Supreme Court's Rules were not established to serve the private purposes of grievants. See Dohaish, 670 F.2d at 937. The system is an aid to and part of the disciplinary process, an essential part of which is weeding out improper and unfounded claims of misconduct. The only person entitled to the due process which the Rules clearly provide is the lawyer who may be subject to license-related sanctions. See, e.g., Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971).
 
 
 63
 Doyle's admitted goal of somehow collaterally attacking a state court decree regarding custody and visitation rights, Complaint p 22, Appendix to Appellant's Brief at 9-10, is impossible and a blatant abuse of the regulatory process. The state court which issued the decree would in no way be bound by the outcome of a regulatory proceeding. Relief, if any is available, must be sought directly in the state court or on appeal from that court's order. Cf. Leeke, 454 U.S. at 86, 102 S.Ct. at 70; Linda R.S., 410 U.S. at 618-19, 93 S.Ct. at 1149. Furthermore, if, as Doyle contends, he was injured by the perjury or misrepresentation of another, a civil action for that injury is recognized in Oklahoma. Perjury is also a crime in Oklahoma. Copeland v. Anderson, 707 P.2d 560, 563 (Okla.Ct.App.1985). These are the only permissible avenues to redress Doyle's injuries, if in fact any actionable misrepresentations occurred as he alleges. See Saier, 293 F.2d at 759.
 
 
 64
 We have considered every argument and claim made by Doyle, whether or not directly addressed herein. We reject them all. We hold that the complaint in this action does not allege the deprivation of any right under the Constitution of the United States.[8]
 
 
 65
 C. SANCTIONS.
 
 
 66
 We have included more detail about Doyle's complaint and arguments than this case warrants because it explains our views regarding sanctions. It is entirely insufficient to describe this case as frivolous. Perhaps Doyle and his counsel were simply incompetent at the district court level; but after two amended complaints followed by the district court's ruling, they were abundantly on notice that the asserted causes of action were nonexistent in law under § 1983. Yet they have appealed and persisted on appeal in arguments which are utterly baseless, and patently inconsistent with a massive body of authority, as well as raising claims--all specious--not fairly raised in the complaint under review. We conclude that this appeal is both frivolous and vexatious.
 
 
 67
 In addition to our inherent power to impose sanctions upon litigants in order to regulate the court's docket, promote judicial efficiency, and deter frivolous filings, see, e.g., Roadway Express, Inc. v. Piper, 447 U.S. 752, 764-66, 100 S.Ct. 2455, 2463-64, 65 L.Ed.2d 488 (1980), Fed.R.App.P. 38, and 28 U.S.C. § 1912, also permit us to impose just damages and single or double costs if an appeal is frivolous or brought for the purposes of delay. See Cunico v. Pueblo School Dist. No. 60, 917 F.2d 431, 444 (10th Cir.1990). In addition, 28 U.S.C. § 1927 provides that "any attorney who ... multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys fees reasonably incurred because of such conduct." See also White v. American Airlines, Inc., 915 F.2d 1414, 1427 (10th Cir.1990).
 
 
 68
 Both Doyle and his attorney are ordered to show cause within 15 days why attorneys fees, double costs, and expenses should not be assessed against them under the statutes and rule just cited. See Braley v. Campbell, 832 F.2d 1504, 1515 (10th Cir.1987).
 
 
 69
 D. CONCLUSION.
 
 
 70
 For the reasons stated above the judgment of the district court dismissing the complaint in this case for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is AFFIRMED. The appellant and his counsel are ordered to show cause, within 15 days, why sanctions should not be imposed upon each of them under Fed.R.App.P. 38; and 28 U.S.C. §§ 1912 and 1927.
 
 
 
 *
 The Honorable John C. Godbold, Senior Judge, United States Court of Appeals, Eleventh Circuit, sitting by designation
 
 
 [1]
 Doyle amended his complaint twice. For convenience we refer to his second amended complaint as the complaint
 
 
 [2]
 Reference to the General Counsel's power to dispose of grievances informally is made in a recent amendment to the Rules relating to record keeping requirements. Okla.Stat.Ann. tit. 5, Ch. 1, App. 1-A, R. 3.2(g)(5) (Supp.1993)
 
 
 [3]
 The cited cases are not distinguishable from the one before us on the ground that the charges sought in this case are in a civil rather than a criminal proceeding. The principles to which we refer are identical in this setting
 
 
 [4]
 42 U.S.C. § 1983 states, in relevant part:
 Every person who, under color of ... [state law] ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
 Under the "Constitution and laws" provision, the statute encompasses violations of federal statutory as well as constitutional rights. See Golden State Transit Corp. v. Los Angeles, 493 U.S. 103, 105, 110 S.Ct. 444, 447, 107 L.Ed.2d 420 (1989). However, Doyle asserts no federal statutory claim.
 
 
 [5]
 The Due Process Clause of the Fourteenth Amendment states: "Nor shall any State deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. Doyle also invokes the Due Process Clause of the Fifth Amendment, as incorporated in the Fourteenth Amendment
 
 
 [6]
 Doyle's reference to a right of access to the courts free of misrepresentations by lawyers left unmonitored by the defendants, Complaint p 22, Appendix to Appellant's Brief at 9, is, presumably, an attempt to articulate a fundamental right found in the Due Process Clause of the Fourteenth Amendment itself. See Bounds v. Smith, 430 U.S. 817, 837-41, 97 S.Ct. 1491, 1503-05, 52 L.Ed.2d 72 (1977) (Rehnquist, J., dissenting). Wherever placed in Doyle's lexicon or in our analysis, however, no such Constitutional right exists, and we have no cause to return to the point. Doyle also includes the proposition that the General Counsel's letter to the Vice Chief Justice violated his Constitutional rights (apparently due process) because prosecutors may not make ex parte remarks to adjudicators. Complaint p 22, Appendix to Appellant's Brief at 9; Appellant's Brief at 16. We also have no need to return to this point. Doyle was not on trial or charged, in fact no one was charged. No due process rights of his were violated by the letter. For the first time, Doyle raises in his brief on appeal some sort of First Amendment claim alleging an infringement of his right to receive information and ideas, citing Bates v. Bar of Arizona, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977). If we were inclined to consider this new claim, which we are not, we would flatly reject it as well. Doyle also claims a right as a member of the public to the "respectability of the bar profession." Appellant's Brief at 23. No such Constitutional right exists. See, e.g., Sattler, 857 F.2d at 227. The regulation of the practice of law is a state matter. Saier, 293 F.2d at 759. The Oklahoma Supreme Court has exclusive jurisdiction in licensing and disciplinary matters. Miskovsky, 824 P.2d at 1093
 Doyle's brief on appeal, at 19, among other newly raised claims, now asserts a purported injury to his reputation for honesty and morality by virtue of the General Counsel's letter to the Vice Chief Justice of the Oklahoma Supreme Court. On its face the letter belies that claim. Furthermore, in circumstances like those alleged here, the Supreme Court made it clear seventeen years ago that no such cause of action is cognizable under § 1983. Paul v. Davis, 424 U.S. 693, 708-09, 96 S.Ct. 1155, 1164, 47 L.Ed.2d 405 (1976). See Siegert v. Gilley, --- U.S. at ----, 111 S.Ct. at 1794.
 
 
 [7]
 Doyle also asserts that the Rules constituted a meaningless investigatory process for claims of lawyer misconduct, Complaint at p 21, Appendix to Appellant's Brief at 9, an assertion we reject on the face of the complaint. He then represented to the district court that he "does not question the wisdom or constitutionality of the design of the procedures set forth in the Rules, but does complain that the procedures were not adhered to." Response to Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, Appendix to Appellant's Brief at 42
 
 
 [8]
 Because of our holding it is unnecessary to address the defenses and related conclusions of the district court regarding various applications of immunity, or other defenses. See Siegert, --- U.S. at ----, 111 S.Ct. at 1793; Maldonado, 975 F.2d at 729