ESTATE OF Katherine WASHINGTON by Kenneth WASHINGTON, Administrator, Plaintiff–Appellant,

v.

The UNITED STATES of America, SECRETARY OF HEALTH & HUMAN SERVICES, Defendant–Appellee.

No. 94–3178.

United States Court of Appeals, Tenth Circuit.

May 2, 1995.

Kenneth M. Clark, Young, Bogle, McCausland, Wells & Clark, Wichita, KS, for plaintiff-appellant.

Paul D. Scott, Atty., Appellate Staff Civ. Div., Dept. of Justice, Washington, DC (Frank W. Hunger, Asst. Atty. Gen., Washington, DC, Randall K. Rathbun, U.S. Atty., Wichita, KS, and Anthony J. Steinmeyer, Atty., Appellate Staff Civ. Div., Dept. of Justice, Washington, DC, with him on the brief), for defendant-appellee.

Before EBEL and KELLY, Circuit Judges, and BRATTON, District Judge.[†]

† The Honorable Howard C. Bratton, Senior United States District Judge for the District of New Mexico, sitting by designation.

PAUL J. KELLY, Jr., Circuit Judge.

Plaintiff–Appellant Estate of Katherine Washington ("the Estate") appeals the district court's granting of a motion for judgment on the pleadings, Fed.R.Civ.P. 12(c), in favor of Defendant–Appellee Secretary of Health and Human Services. Our jurisdiction arises under 28 U.S.C. § 1291 and we vacate the district court's judgment and render judgment as hereinafter set forth.

## Background

Katherine Washington, a Medicare beneficiary, was seriously injured in a 1987 automobile accident. The Health Care Financing Administration ("HCFA"), an agency of the Department of Health and Human Services ("HHS"), subsequently paid a total of $48,142 in conditional Medicare payments on her behalf. In addition, Ms. Washington settled with her liability insurer, and received $199,449 for her injuries. This recovery represented slightly less than 25% of the $800,000 in damages she suffered.

In January 1990, Ms. Washington received notice that under the Medicare Secondary Payer Statute ("the MSP Statute"), 42 U.S.C. § 1395y(b)(2)(B), she was obligated to reimburse the government for the $48,142 in conditional Medicare payments, out of the proceeds received from the insurance settlement. The appendix does not reflect, but we assume that this insurance settlement specifically reimbursed Ms. Washington for her medical expenses. Ms. Washington requested, and was denied, a waiver of this repayment obligation. She was notified several more times of her obligation, but never repaid HCFA for its Medicare outlays.

Ms. Washington passed away in February 1991. Subsequently, her estate received notice of HCFA's outstanding claim for reimbursement. In accordance with 42 C.F.R. § 411.37(c), the government reduced its demand to $31,410.60 to reflect its share of the attorneys fees and expenses associated with the insurance settlement. Disputing its obligations to repay this amount in full, the Estate contended that because Ms. Washington had recovered only a portion of her total damages from the insurer, HCFA was entitled to receive only a like proportion of its Medicare expenditures. The government rejected this position, based on its reading of § 1395y(b)(2) of the MSP Statute, and on cases from other jurisdictions finding that this provision allows HCFA to recover the full extent of its Medicare payments from a beneficiary's insurance settlement (minus a proportion of attorney fees and costs). *See, e.g., United States v. Sosnowski,* 822 F.Supp. 570, 574 (W.D.Wis.1993); *St. Agnes Hosp. v. Jaeckel,* 616 F.Supp. 426, 428 (E.D.Wis.1985). The government, however, did not inform the Estate of the existence of these authorities.

In September 1993, the Estate filed a complaint, seeking a declaratory judgment determining whether the government was entitled to recover, and if so in what amount, the conditional Medicare payments made on behalf of Ms. Washington. The government then filed an answer and counterclaim, seeking judgment for $48,142, the full amount of the conditional Medicare payments. In January 1994, HHS moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c), arguing that the plain language of the MSP Statute and of 42 C.F.R. § 411.37, a regulation implementing the MSP Statute, as well as previously undisclosed authorities from other jurisdictions, was fatal to the Estate's proportionality theory. The district court granted the motion and awarded the government $48,142, plus post-judgment interest. This appeal followed.

## Discussion

### A. 42 C.F.R. § 411.37

When a party has moved to dismiss and a judgment has been granted on the pleadings pursuant to Fed.R.Civ.P. 12(c), our review is de novo. *See McHenry v. Utah Valley Hosp.,* 927 F.2d 1125, 1126 (10th Cir.), *cert. denied,* 502 U.S. 894, 112 S.Ct. 263, 116 L.Ed.2d 217 (1991); *Doyle v. Oklahoma Bar Ass'n,* 998 F.2d 1559, 1566 (10th Cir.1993). On appeal, the Estate does not dispute that

the MSP Statute mandates a full, rather than a proportional, recovery of conditional Medicare payments. Instead, the Estate challenges the district court's implicit application of 42 C.F.R. § 411.37(e) in assessing the amount of reimbursement owed to HCFA, once the court had rejected the Estate's proportionality theory.

As a regulation implementing the MSP Statute, C.F.R. § 411.37 sets forth the formulae for determining the amount of reimbursement the government can recover through suit against a Medicare beneficiary who has received a third party payment from a judgment or settlement. The regulation generally provides that HCFA will reduce its recovery to account for the procurement costs associated with the judgment or settlement over a disputed claim against a third party. 42 C.F.R. § 411.37(a)(1). When the judgment or settlement amount exceeds the Medicare payment amount, HCFA's recovery against the beneficiary is computed to be the Medicare payment amount minus a share of the procurement costs associated with the judgment or settlement. 42 C.F.R. § 411.37(c). This partial deduction for procurement costs is determined by figuring the ratio of the procurement costs to the total judgment or settlement payment, and then multiplying the total Medicare payments by this ratio. The product of this multiplication represents HCFA's share of the procurement costs, which is then subtracted from the Medicare payment total to arrive at the amount HCFA may recover from the beneficiary. *Id.* These computations are undeniably complex, but for our purposes it is only necessary to understand that application of these general provisions of § 411.37 would result in the Estate owing $31,410.60 to the government.

As a special rule, however, if HHS "must bring suit against the [Medicare beneficiary who] received payment because that party opposes HCFA's recovery, the recovery amount is the lower of the following: (1) Medicare payment. (2) The total judgment or settlement amount, minus the [Medicare beneficiary]'s total procurement costs." 42 C.F.R. § 411.37(a)(2); 42 C.F.R. § 411.37(e). Under application of this subsection, the amount of reimbursement owed by the Estate to the government grows to $48,142.

■ The Estate contends that because it only questioned the amount of reimbursement owed and only instituted a declaratory judgment action, the general rule of § 411.37(a)(1) and § 411.37(c) should apply, and not the special rule of § 411.37(e). We agree.

Our analysis boils down to an inquiry of whether the declaratory judgment action initiated in this case constitutes opposition to HCFA's recovery such that the Estate falls within the ambit of § 411.37(e). The sparse legislative history pertaining to this regulation is of no help in this regard, and there is no case authority remotely on point. Thus, we must consider on our own whether it makes sense to equate the sort of declaratory judgment relief sought by the Estate with an opposition to recovery.

It does not. In *Abbott Labs. v. Gardner,* the Supreme Court recognized that a declaratory judgment action, 28 U.S.C. § 2201 (1994), provides a means by which a party may avoid being placed on the horns of a regulatory dilemma. 387 U.S. 136, 152, 87 S.Ct. 1507, 1517, 18 L.Ed.2d 681 (1967). To deem the Estate's declaratory judgment action, seeking only to discover how much it owed to HCFA, as "oppos[ing] recovery" would turn the purpose underlying such an action on its head, for we would be placing the Estate on the very horns of the dilemma it was seeking to avoid. Under such a broad reading of § 411.37(e)'s language, the Estate would be forced to choose between two unsatisfactory alternatives: (1) give up its proportional recovery theory and the possibility of reducing the amount owed to HCFA; or (2) pursue its declaratory judgment action and lose any possible reduction for the government's share of attorneys fees and expenses. To allow the Estate to avoid such an unnecessary quandary by ascertaining its rights without fear of essentially being penalized, and thereby realizing the intended benefits of a declaratory judgment action, we hold that the declaratory relief sought by the

Estate in this case does not constitute "oppos[ing] HCFA's recovery," for purposes of § 411.37(e).

Of course, such declaratory relief must be sought in good faith and not be frivolous. Declaratory judgment actions, like any other judicial process, are susceptible of being misused. If misused by a claimant, such an action could trigger the penalties contemplated by § 411.37(e). There is no suggestion, however, of misuse in this record.

Given the conclusion that § 411.37(e) does not apply, the amount that HCFA may recover from the Estate is governed by the general provisions of § 411.37(a) & § 411.37(c). The Estate therefore owes the government $31,410.60.

This result may well have been reached far earlier, and at far less cost, if the government had been more forthcoming about the authority supporting its rejection of the Estate's proportionality theory. Rule 11 of the Federal Rules of Civil Procedure and Rule 3.3 of the Model Rules of Professional Conduct focus, respectively, on a movant's burden of "reasonable inquiry," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990), and a lawyer's duty to disclose adverse controlling authority, as a means of protecting the judiciary's efficiency and integrity. Unfortunately, these rules do not protect lawyers from one another. Nevertheless, we think that counsel in the future would be well-advised to remember the spirit of the general standards enunciated in Canon 1 of the A.B.A. Model Code of Professional Responsibility ("A lawyer should assist in maintaining the integrity and competence of the legal profession."), and Model Code of Professional Responsibility DR 1–102(A)(5) (a lawyer shall not engage in "conduct that is prejudicial to the administration of justice").

## B.  Costs

■ HHS argues that the Estate should pay the costs and attorney fees incurred by the government on appeal pursuant to Fed. R.App.P. 38. It further contends that the Estate should be barred from paying unpaid legal fees relating to both the declaratory judgment action and the present appeal until HCFA first has been reimbursed for its conditional Medicare expenditures. Neither of these arguments is persuasive.

Rule 38 of the Federal Rules of Appellate Procedure provides that "[i]f a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee." An appeal is considered "frivolous" when "the result is obvious, or the appellant's arguments of error are wholly without merit." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (internal quotation omitted). To our mind, the present appeal is not "frivolous." The Estate has posited fair questions regarding the applicability and interpretation of § 411.37, and answering these question most certainly has not been a waste of our time.

We likewise refuse to compensate the government for its litigation costs by sanctioning the Estate's attorneys under 28 U.S.C. § 1927. Their conduct does not rise to the level of recklessness or indifference that this Circuit has required to sanction an attorney under § 1927. *Braley*, 832 F.2d at 1511. Indeed, we find the government's charge that the Estate has multiplied proceedings unreasonably and vexatiously to be highly ironic, given its own reluctance to disclose to the Estate the existence of cases that might well have shortened, or even avoided, the underlying litigation.

The government's request that we bar the Estate from paying legal fees until it has reimbursed HCFA for Medicare expenditures is based solely on the idea that to allow the Estate to give priority to these fees would be to lessen the likelihood of full HCFA reimbursement. This is a tautology, not an argument, and we see no reason to interfere with a priority of payment issue more properly left to a probate court.

We VACATE the district court's judgment and render judgment in favor of HHS in the amount of $31,410.60.