**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**February 21, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

RICKEY DON CUTBIRTH,

   Petitioner-Appellant,

v.

WYOMING DEPARTMENT OF
CORRECTIONS DIRECTOR,
also known as Robert Lampert;
WYOMING ATTORNEY
GENERAL, also known as Patrick J.
Crank,

   Respondents-Appellees.

No. 06-8001
(D.C. No. 04-CV-212-WFD)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO**, **BALDOCK**, and **EBEL**, Circuit Judges.

Petitioner Rickey Don Cutbirth appeals from a district court order denying

his 28 U.S.C. § 2241 petition for habeas corpus, which challenged the revocation

of his parole under the Due Process Clause of the Fourteenth Amendment. The

---

[*]  After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court granted Cutbirth a certificate of appealability (COA) on the single issue of whether he was denied due process at his parole revocation hearing by having a hearing body composed of two board members instead of three, as required under Wyoming law. Because we conclude that Cutbirth received all of the due process to which he was entitled under the Fourteenth Amendment, we exercise our jurisdiction under 28 U.S.C. § 1291 to affirm.

I.

The relevant facts underlying Cutbirth's due process challenge are not disputed. He is a Wyoming state prisoner serving a sentence of 11 to 95 years for second-degree murder. In January 1997, he was released on parole pursuant to a standard parole agreement that required him to keep his parole officer informed of his whereabouts and steer clear of illegal controlled substances. In February 2000, Cutbirth tested positive for marijuana and shortly thereafter absconded from supervision. He remained at large until November 2003, when he was taken into custody while reentering the United States in Newark, New Jersey.

Following a preliminary hearing, the State determined that there was probable cause to revoke Cutbirth's parole. On February 18, 2004, he signed a "Waiver of Final Revocation Hearing," R. doc. 20, attach. A, ex. 7 (Waiver), in which he admitted to violating the conditions of his parole by using marijuana and absconding from supervision. Notwithstanding the Waiver, Cutbirth did have a final revocation hearing on February 25, 2004. Under Wyoming law, he was

-2-

entitled to a hearing panel consisting of three parole-board members.[1] Due to bad weather, however, one member was unable to reach the hearing location, and Cutbirth reluctantly agreed to proceed before just two members. At the conclusion of the hearing, the Wyoming Board of Parole, acting through Michelle Daigle, chair of the hearing panel, revoked Cutbirth's parole based on his admissions in the Waiver to violating the terms of his parole agreement. It also ordered that he not receive credit for the four years that he spent on parole, i.e., "street time."

After challenging the parole board's decision unsuccessfully in state court, Cutbirth filed a petition for habeas corpus in U.S. district court under 28 U.S.C. § 2241, advancing the following three arguments: (1) that he was denied the assistance of counsel during the final revocation hearing; (2) that his due process rights were violated by having a hearing body of only two parole board members in violation of Wyoming law; and (3) that his sentence was unlawfully enhanced because he was denied credit for his street time.

---

[1]

> Three (3) or more members of the board may constitute a hearing panel empowered to review applications for parole, grant paroles or revoke paroles. Fewer than three (3) members of the board . . . may withdraw or revoke good time, restore or reinstate good time, make initial determinations of eligibility and restore voting rights pursuant to W.S. 7-13-105(b) and (c), make recommendations to the governor to grant commutations of sentences and review inmate matters, other than the grant or denial of parole, brought before the board.

Wyo. Stat. Ann. § 7-13-401(f) (1977).

On December 19, 2005, the district court issued its order denying the petition. With respect to the first argument, the court held that at Cutbirth's parole revocation hearing, "he did not enjoy the constitutional right to an attorney." R. doc. 28 at 6. As the court explained, a parolee is not automatically entitled to the assistance of counsel at a parole revocation hearing. *Gagnon v. Scarpelli*, 411 U.S. 778, 790-91 (1973). Rather, the state is entrusted to determine on a case-by-case basis whether counsel is required to satisfy the fundamental precepts of due process. Typically, counsel is not required where, as in Cutbirth's case, the parolee admits to violating the terms of his parole. Finally, the district court determined that Cutbirth's mitigation arguments were neither complex nor difficult to develop and that there was no indication that he was incapable of presenting his case to the parole board.

The court rejected Cutbirth's second argument based on *Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972), a case in which the Supreme Court outlined the minimum constitutional requirements that must be afforded a parolee at the final revocation hearing. Consistent with its approach in *Gagnon*, the Court in *Morrissey* was flexible and declined to "write a code of procedure," which it felt was a task better left to the states. 408 U.S. at 488. It held, however, that "a 'neutral and detached' hearing body," *id.* at 489, is among the minimum requirements necessary to satisfy due process. Following *Morrissey*, the district court held that in order for Cutbirth to prove that his due process rights were

violated, he had to "provide a factual basis showing that the lack of participation by the third Parole Board member resulted in a hearing body which was not neutral and detached." R. doc. 28 at 7. And it concluded that Cutbirth failed to set forth sufficient facts to make such a showing. Addressing Cutbirth's arguments that the two female board members were prejudiced by alleged outbursts made by Antonio Escamilla, a parole program coordinator who attended the hearing, the court concluded that such "speculation . . . [was] not adequate to show partiality." *Id.* The court went on to conclude that even if a two-member hearing panel constituted a violation of due process, the error was harmless under *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). "[T]he failure of a third panel member to review Mr. Cutbirth's parole revocation [was] harmless, as the lack of a third member did not have a substantial and injurious effect or influence in determining the revocation proceeding's outcome." R. doc. 28 at 9.

Finally, the court found no Sixth Amendment impediment to denying Cutbirth credit for his street time "because the denial did not lengthen or prolong his sentence beyond the original term imposed by the trial judge, even though the maximum sentence discharge date may have been extended due to the forfeiture." *Id.* at 10.

II.

Cutbirth was granted a COA on the issue of whether his due process rights were violated because he was denied a three-member hearing panel. We review

-5-

the district court's resolution of this legal question and its dismissal of Cutbirth's habeas petition de novo. *Weekes v. Fleming*, 301 F.3d 1175, 1176-77 (10th Cir. 2002). We agree with the district court that Cutbirth's parole revocation hearing afforded him the minimum procedural protections mandated by *Morrissey* and we affirm its decision for the same reasons articulated in its well-reasoned opinion of December 19, 2005.

Considering Cutbirth's heavy reliance on Wyoming law in support of his due process challenge, however, one aspect of the district court's decision deserves elaboration. The court rejected Cutbirth's reliance on Wyoming statute 7-13-401(f) because it observed, correctly, that parole revocation proceedings give rise to protection by the Due Process Clause of its own force, not by virtue of any state law. Cutbirth's argument seems to be that even so, the State of Wyoming granted parolees even greater protection by enacting § 7-13-401(f). This is true. The Wyoming statute clearly provides that a hearing panel empowered to revoke parole must be comprised of three or more board members, something not mandated in *Morrissey*. But the leap that we decline to make is that this right to a three-member panel is somehow protected by the Due Process Clause.

It has long been recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). In this case, Cutbirth claims that by using

mandatory language in § 7-13-401(f), the State created a liberty interest in his right to a three-member hearing panel. This right, however, is nothing more than a right to a certain process. Even if the third board member were present, Cutbirth was not guaranteed a particular outcome. We have held that a state-created right to process is not constitutionally guaranteed. *Doyle v. Oklahoma Bar Ass'n*, 998 F.2d 1559, 1570 (10th Cir. 1993).

> Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement. The mere expectation of receiving a state afforded process does not create an independent liberty interest protected by the Due Process Clause.

*Id.* (quotation and citation omitted). Since § 7-13-401(f) requires no more than that the State afford parolees a particular process, which itself goes beyond that required by *Morrissey*, there was no federal due process violation inherent in the revocation of Cutbirth's parole by two board members.

III.

Finally, Cutbirth has filed a motion to expand the scope of the COA to include the following three issues: (1) whether he was unconstitutionally denied the right to counsel at his parole revocation hearing; (2) whether Escamilla's participation at the parole revocation hearing violated his due process rights; and (3) whether the parole board violated his rights by stating that it would not consider a future grant of parole unless and until he relocated his family from the United Kingdom to the United States. Cutbirth is entitled to a COA on these

issues "only upon making a 'substantial showing of the denial of a constitutional right.'" *Montez v. McKinna*, 208 F.3d 862, 869 (10th Cir. 2000) (quoting 28 U.S.C. § 2253 (c)(2)). For the reasons discussed in the district court's December 19, 2005, order, we conclude that Cutbirth has not made the requisite showing as to the first two issues raised in his motion.

Although Cutbirth raised the third issue in the district court, the court did not address it in its opinion. We conclude, however, that Cutbirth deserves no encouragement to proceed further as to this issue. He has not told us where in the record the parole board made this alleged statement, and we are unable to find it. What we did find was the parole board's "Findings of Fact, Conclusions and Final Disposition," R. doc. 9, Ex. K., which states that its decision to revoke Cutbirth's parole was based on the admissions that he made in the Waiver. There is nothing in the record to indicate that the location of Cutbirth's family played any role in the board's decision, and the only question before us is whether Cutbirth was afforded his constitutional rights during the parole revocation process. Whether there are any unconstitutional prerequisites to his ability to make future parole is not an issue in this appeal. In short, with respect to all of the issues raised in Cutbirth's motion, he has failed to make "a substantial showing of the denial of a constitutional right." *Montez*, 208 F.3d at 869 (quotation omitted). His motion to expand the COA is therefore DENIED.

The judgment of the district court is AFFIRMED.

Ms. Swearingen's motion to withdraw as counsel for appellees is GRANTED.

Entered for the Court


Bobby R. Baldock
Circuit Judge