LEEKE, DIRECTOR OF SOUTH CAROLINA DEPART-
MENT OF CORRECTIONS, ET AL. *v.*
TIMMERMAN ET AL.

No. 80–2077.   Decided November 16, 1981

PER CURIAM.

Petitioners, state correctional officials, seek review of a decision of the United States Court of Appeals for the Fourth Circuit finding petitioners in violation of 42 U. S. C. § 1983 for opposing respondents' application for an arrest warrant. We grant the motion of respondents for leave to proceed *in forma pauperis* and the petition for writ of certiorari and reverse on the basis of our decision in *Linda R. S.* v. *Richard D.*, 410 U. S. 614 (1973).

I

Respondents were prison inmates in the Central Correctional Institution in Columbia, S. C., at the time of a prison uprising in August 1973. Respondents contend that during the uprising they were unnecessarily beaten by prison guards. Respondent Timmerman sought criminal arrest warrants against four prison guards. In support of his action, Timmerman presented sworn statements to a Magistrate along with alleged "confidential information" from an employee at the prison who purportedly investigated the incident and concluded that respondents were victimized by the prison guards. Although a subsequent hearing in the Federal District Court indicated that the information provided by Timmerman was "suspect at best," it provided sufficient evidence to convince the state-court Magistrate that probable cause existed for issuance of arrest warrants against the prison guards. The Magistrate informed the legal adviser to the South Carolina Department of Corrections of his intent to issue the warrants and the legal adviser relayed this information to the prison Warden.

In an effort to have the criminal action against the correctional officers dropped, the legal adviser and Warden met with the County Sheriff, Deputy Attorney, and State Solicitor. At the meeting, the State Solicitor reviewed the facts and stated that there would be no indictment against three of the accused guards, but that he was unsure whether an in-

dictment would be sought against the fourth guard. As a result of the meeting, the State Solicitor wrote a letter to the Magistrate requesting that the warrants not be issued. The Solicitor also stated that he intended to ask the State Law Enforcement Division to conduct an investigation concerning the charges made against the officers involved; the Magistrate did not issue the warrants and no state investigation was initiated.

Respondents subsequently filed suit in the United States District Court for the District of South Carolina contending, among other claims, that petitioners conspired in bad faith to block the issuance of the arrest warrants for the prosecution of the prison guards. The District Court concluded that petitioners denied respondents their right to "a meaningful ability to set in motion the governmental machinery because [petitioners' activities] stopped the machinery unlawfully, not in a proper way, as for example, upon a valid determination of lack of probable cause."[1] Although the State Solicitor and the Magistrate were found to be immune from damages, the District Court concluded that the legal adviser to the prisons and the Director of the Department of Corrections were liable for their actions in requesting the State Solicitor to discourage issuance of the warrants. Respondents were awarded $3,000 in compensatory damages, $1,000 in punitive damages and attorney's fees against the two petitioners.

The United States Court of Appeals for the Fourth Circuit affirmed and acknowledged that under *Linda R. S.* v. *Richard D., supra,* at 619, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of

---

[1] The case had previously been appealed to the United States Court of Appeals for the Fourth Circuit, at which time the Court of Appeals determined that the State Magistrate and State Solicitor were not insulated from declaratory and injunctive relief by judicial immunity and that the action was not barred by *Younger* v. *Harris,* 401 U. S. 37 (1971). *Timmerman* v. *Brown,* 528 F. 2d 811 (1975).

another." The Court of Appeals concluded, however, that *Linda R. S.* did not foreclose respondents' right to seek an arrest warrant.

## II

In *Linda R. S.* the mother of an illegitimate child brought an action in United States District Court to enjoin "discriminatory application" of a Texas Penal Code provision that imposed criminal sanctions on a parent who willfully deserted, neglected, or refused to provide child support. The Texas courts had held that the statute applied only to the parents of legitimate children and did not apply to the parents of illegitimate children. We held that the appellant in *Linda R. S.* did not have standing to challenge the statute because she had failed to allege a sufficient nexus between her injury and the government's failure to prosecute fathers of illegitimate children. Even if the appellant in *Linda R. S.* were granted the requested relief, the Court concluded that the remedy sought by the appellant would not guarantee payment of child support. The remedy sought would only increase the probability of prosecution of the father for the failure to provide support, and "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Ibid.*

Our holding in *Linda R. S.* controls disposition here. The threshold inquiry is whether respondents have standing to challenge the actions of petitioners. As in *Linda R. S.*, there is a questionable nexus between respondents' injury—the alleged beatings—and the actions of the state officials in which they gave information to a Magistrate prior to issuance of an arrest warrant. Even without the prosecutor's acts, there is no guarantee that issuance of the arrest warrant would remedy claimed past misconduct of guards or prevent future misconduct. Even if a prosecution could remedy respondents' injury, the *issuance* of an arrest warrant in this case is simply a prelude to actual prosecution. Respondents

concede that the decision to prosecute is solely within the discretion of the prosecutor. It is equally clear that issuance of the arrest warrant in this case would *not* necessarily lead to a subsequent prosecution.

A private citizen therefore has no judicially cognizable right to prevent state officials from presenting information, through intervention of the state solicitor, that will assist the magistrate in determining whether to issue the arrest warrant. Just as respondents were able to present arguments as to why an arrest warrant should issue, a state solicitor must be able to present arguments as to why an arrest warrant should not issue. This is not a case in which prison officials interfered with the transmittal of information from respondents to the magistrate, thereby interfering with respondents' ability under South Carolina law to seek the arrest of another. S. C. Code § 22–3–710 (1976).[2]

In this case respondents had access to judicial procedures to redress any claimed wrongs. Respondents, in other words, were able to "set in motion the governmental machinery," *Lane* v. *Correll*, 434 F. 2d 598, 600 (CA5 1970), and bring their complaints to the attention of the Magistrate. The actions of the state officials, by which they influenced the decision of the State Solicitor to oppose issuance of the arrest warrants, thus did not violate any judicially cognizable rights of respondents.[3]

The judgment of the Court of Appeals is

*Reversed.*

---

[2] As early as 1870 the South Carolina Supreme Court indicated that under South Carolina law, "[s]ave for the just and proper vindication of the law, no one has an interest in the conviction of [another]." *State* v. *Addison*, 2 S. C. 356, 364.

[3] This conclusion comports with the smooth functioning of the criminal justice system. The American Bar Association Standards for Criminal Justice, The Prosecution Function 3–3.4 (2d ed. 1980), propose that where the law permits a private citizen to complain directly to a judicial officer, the complainant "should be required to present the complaint for prior approval to the prosecutor, and the prosecutor's actions or recommendation

JUSTICE BRENNAN, with whom JUSTICE MARSHALL and JUSTICE BLACKMUN join, dissenting.

In my view, the Court, by mischaracterizing respondents' alleged injury, improperly invokes *Linda R. S.* v. *Richard D.*, 410 U. S. 614 (1973), to deny respondents standing in this civil action brought pursuant to 42 U. S. C. § 1983 and 42 U. S. C. § 1985(3) (1976 ed., Supp. IV).

*Linda R. S.* involved a challenge to Texas' enforcement of Art. 602 of the Texas Penal Code, brought by the mother of an illegitimate child. Article 602 provided in part that "any parent who shall wilfully desert, neglect or refuse to provide for the support and maintenance of his or her child or children under eighteen years of age, shall be guilty of a misdemeanor, and upon conviction, shall be punished by confinement in the County Jail for not more than two years." The State construed Art. 602 to apply only to parents of legitimate children, and had accordingly declined to prosecute the father of the appellant's child despite his refusal to provide support for the child. The appellant sought to enjoin the State's "discriminatory application" of the statute. Holding that the appellant lacked standing to raise this challenge to the construction of the State's criminal statute, this Court affirmed the dismissal of the action. The Court reasoned that while the "appellant no doubt suffered an injury stemming from the failure of her child's father to contribute support payments," there was no "'direct' relationship" between the State's failure to prosecute the father and the injury sustained. *Linda R. S., supra,* at 618. Rather, the Court declared, "[t]he prospect that prosecution will, at least in the

___

thereon should be communicated to the judicial officer or grand jury." Many jurisdictions contain provisions for private citizens to initiate the criminal process, and some have required or encouraged input of the prosecuting attorney before issuance of an arrest warrant. See, *e. g.*, Neb. Rev. Stat. § 29–404 (1979); Ohio Rev. Code Ann. § 2935.10 (1975); S. D. Comp. Laws Ann. § 23A–2–2 (1979); Wis. Stat. § 968.02(3) (1977).

future, result in payment of support can, at best, be termed only speculative." 410 U. S., at 618.

The Court seeks to bring the present case within the holding of *Linda R. S.* by suggesting that "[a]s in *Linda R. S.*, there is a questionable nexus between respondents' injury—the alleged beatings—and the actions of the state officials in which they gave information to a Magistrate prior to issuance of an arrest warrant. . . . It is . . . clear that issuance of the arrest warrant in this case would *not* necessarily lead to a subsequent prosecution." *Ante*, at 86–87. The Court's analysis simply cannot withstand scrutiny. Contrary to the Court's suggestion, the respondents' alleged injury—for the purposes of their civil action brought pursuant to §§ 1983 and 1985(3)—is not the "beatings," but rather the deprivation of their constitutional right of access to the courts, assured by the First and Fourteenth Amendments. They have alleged that petitioners' conspiratorial acts deprived them of their right to *seek* an arrest warrant, and thus denied them their constitutional right of access to the courts. Plainly there is a substantial nexus between the alleged injury and petitioners' acts, thus making *Linda R. S.* wholly inapposite. If there is a basis for denying respondents standing to bring their civil action, it is not to be found in *Linda R. S.*

Under the circumstances, plenary review is merited. Accordingly, I dissent.