

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-0307-09

**RONALD WILSON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTH COURT OF APPEALS BEXAR COUNTY

  **HERVEY, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER, J., joined.**

## DISSENTING OPINION

  I respectfully dissent. Concerning the court-made federal exclusionary rule that it adopted

in *Weeks v. United States*,[1] the United States Supreme Court has stated:

> Suppression of evidence, however, has always been our last resort, not our first impulse. The [federal] exclusionary rule generates substantial social costs, which sometimes include setting the guilty free and the dangerous at large. We have therefore been cautio[us] against expanding it, and have repeatedly emphasized that the rule's costly toll upon truth-seeking and law enforcement objectives presents a

---

[1]

232 U.S. 383 (1914).

high obstacle for those urging [its] application. We have rejected [i]ndiscriminate application of the rule, and have held it to be applicable only where its remedial objectives [of deterring police conduct that actually violates a defendant's personal rights] are thought most efficaciously served,–that is, where its deterrence benefits outweigh its substantial social costs.

*Hudson v. Michigan*, 547 U.S. 586, 591, 596 (2006) (internal quotes and citation to authorities omitted).

The federal exclusionary rule "is an entirely American legal creation" which "is still universally rejected by other countries." *See Sanchez-Llamas v. Oregon*, 548 U.S. 331, 343-44 (2006) (internal quotes omitted). The federal exclusionary rule is generally applied to deter police violations of the defendant's Fourth and Fifth Amendment rights and to deter police violations of statutes that implicate these Fourth and Fifth Amendment rights. *See Sanchez-Llamas* 548 U.S. at 348-49.

Appellant's confession would not be excluded under these federal exclusionary rule principles. According to the majority opinion, the "underlying purpose of both the federal exclusionary rule and article 38.23 is the same: to protect a suspect's privacy, property, and liberty rights against overzealous law enforcement" and the "primary purpose of article 38.23(a) is to deter unlawful actions **which violate the rights of criminal suspects** in the acquisition of evidence for prosecution." *See* Maj. Op. at 10-11 (emphasis supplied). Despite this, the majority opinion also states that our state statutory exclusionary rule in Article 38.23(a) "prohibits the use of a much broader category of 'illegally obtained' evidence" than does the federal exclusionary rule and that "Article 38.23 prohibits the admission of evidence obtained in violation of Texas penal laws related to gathering, creating, or destroying evidence." *See* Maj. Op. at 9.[2] The majority opinion decides

---

[2] It is, however, debatable whether our state statutory exclusionary rule in Article 38.23(a) was

that appellant's confession must be suppressed under Article 38.23(a) apparently because appellant would not have confessed but for Roberts' violation of Section 37.09, TEX. PEN. CODE, which, according to the majority opinion, is meant to prohibit "police officers from using fabricated documents to affect the course of their investigations." *See* Maj. Op. at 10-11.[3]

I would decide that appellant's confession should not be suppressed under Article 38.23(a) because any violation of Section 37.09 by Roberts did not violate any of appellant's personal rights. *See* Maj. Op. at 11 ("primary purpose of article 38.23(a) is to deter unlawful actions **which violate the rights of criminal suspects** in the acquisition of evidence for prosecution") (emphasis supplied). In other words, appellant has no standing to complain that Roberts may have violated Section 37.09 in obtaining appellant's voluntary confession.

In *Fuller v. State*,[4] this Court explained the law of standing as it relates to Article 38.23(a):

---

originally intended to exclude a broader category of "illegally obtained evidence" than its federal counterpart. *See Chapin v. State*, 296 S.W. 1095, 1099 (Tex.Cr.App. 1927); *Craft v. State*, 295 S.W. 617, 618 (Tex.Cr.App. 1927); *Chavez v. State*, 9 S.W.3d 817, 822 (Tex.Cr.App. 2000) (Price, J., concurring in the judgment) (legislative history of Article 38.23(a) makes it "virtually irrefutable" that Article 38.23(a) was enacted "in order to provide Texas citizens with the protections of the Fourth Amendment's exclusionary rule"); *State v. Johnson*, 939 S.W.2d 586, 588-93 (Tex.Cr.App. 1996) (McCormick, P.J., dissenting) (in enacting our state statutory exclusionary rule, the Legislature intended to make our state exclusionary rule jurisprudence consistent with federal exclusionary rule jurisprudence as recognized in this Court's decisions in *Chapin* and *Craft* which were decided very soon after the Legislature enacted our state statutory exclusionary rule).

[3]

It should be noted that appellant's confession would not be excluded under Article 38.23(a) had Roberts not fabricated a forensic lab report but merely told appellant that Roberts had a forensic lab report stating that appellant's fingerprints were found on the magazine clip. This seems to be a very fine distinction for determining the admissibility of appellant's confession and whether a murderer might go free. *See Hudson*, 547 U.S. at 591 (discussing "substantial social costs" of federal exclusionary rule).

[4]

829 S.W.2d 191, 201-02 (Tex.Cr.App. 1992).

In Texas, the law of standing has been developed mainly in the courts of civil jurisdiction. There, [i]t is a fundamental rule of law that only the person whose primary legal right has been breached may seek redress for an injury. Consequently, [s]tanding consists of some interest peculiar to the person individually and not as a member of the general public. For a person to maintain a court action, [therefore], he must show that he has a justiciable interest in the subject matter in litigation, either in his own right or in a representative capacity. One who has not suffered an invasion of a legal right does not have standing to bring suit.

Kindred rules have also appeared in the criminal context, usually as a result of search-and-seizure litigation. Thus, when the predecessor of article 38.23(a) was first enacted in 1925, contentions identical to those presented here were urged soon after. And, in a series of early opinions, this Court rejected them all, holding that [t]he right to complain because of an illegal search and seizure is a privilege personal to the wronged or injured party, and is not available to anyone else. Our position in this respect has remained generally unchanged over the years.

See *Fuller*, 829 S.W.2d at 201-02 (internal quotes and citation to authorities omitted).

In *Fuller*, the trial court admitted into evidence an audio recording that the defendant made and sent to a fellow prisoner (Brenda Hall). *See id*. Another prisoner took this audio recording from Brenda Hall and gave it to the police. *See id*. The defendant claimed at his capital murder trial that the audio recording should have been suppressed under Article 38.23(a) because it was illegally taken from Brenda Hall. *See Fuller*, 829 S.W.2d at 201-02. This Court applied the foregoing principles to decide that the defendant had no standing "to challenge such illegality in the context of a criminal prosecution." *See Fuller*, 829 S.W.2d at 202. This Court stated in *Fuller*:

The justiciable injury suffered as a direct and immediate result of the illegality of which Appellant here complains was not his own. The illegality, if any, was theft or conversion. The victim, if any, was Brenda Hall. Brenda Hall may have a cognizable cause of action for conversion against someone. The State of Texas may have a basis to prosecute someone for the criminal offense committed against Brenda Hall. But no one may sue, nor may the State of Texas prosecute, anyone for an injury to the Appellant arising from the illegality about which he now complains, since he suffered no injury actionable under our law as a result of it. No actionable wrong was visited upon Appellant as a result of the seizure. For this reason we hold that he is also without standing to challenge such illegality in the context of a criminal

prosecution, and we reaffirm our early cases to such effect.

*See id.*

In *Chavez*, a Rural Area Narcotics Task Force undercover police officer purchased cocaine from the defendant outside the undercover officer's geographical boundary set out in an Interlocal Assistance Agreement between various counties for the purpose of investigating illegal drug activity as authorized by a particular statutory provision in the Local Government Code. *See Chavez*, 9 S.W.3d at 818-19. The five-judge majority opinion in *Chavez* apparently understood the defendant to claim that the cocaine should have been suppressed under Article 38.23(a) because it was seized by the undercover officer in violation of the Interlocal Assistance Agreement and the statutory provision in the Local Government Code that authorized this agreement. *See Chavez*, 9 S.W.3d at 818-19 (McCormick, P.J., joined by Mansfield, Keller, Womack and Keasler, JJ.). The five-judge majority opinion applied *Fuller* to decide that the defendant had no standing to complain about the undercover officer's violation of this agreement because this violation did not violate any of the defendant's personal rights. *See id.*

Judge Price concurred only in the judgment in *Chavez* in a separate opinion, which Judge Meyers also joined. *See Chavez*, 9 S.W.3d at 821-23 (Price, J., concurring in the judgment, joined by Meyers, J.). Judge Price's concurring opinion agreed with the majority opinion that a defendant has no standing to complain that evidence was illegally obtained for Article 38.23(a) state exclusionary rule purposes unless the "defendant's personal or property rights are illegally violated in the obtainment of the evidence against him." *See Chavez*, 9 S.W.3d at 823 (Price, J., concurring in the judgment). Judge Price also wrote:

But the underlying theory of both the [federal] exclusionary rule and article 38.23 is

> the same: to protect a suspect's liberty interests against the overzealousness of others in obtaining evidence to use against them. Thus, unless someone's privacy or property interests are illegally infringed upon in the obtainment of evidence, the core rationale for providing this prophylactic measure [in Article 38.23(a)] is not met and its use is unwarranted. To expand the breadth of 38.23 to any and every violation of Texas "law"–beyond those that affect a defendant's privacy or property interests–is to ignore the basic premise under which the statute was created and would lead to absurd results.

*See Chavez*, 9 S.W.3d at 822-23 (Price, J., concurring in the judgment).

Judge Price's concurring opinion, however, would have decided that the illegality at issue in *Chavez* was the undercover officer's possession of the cocaine that he purchased from the defendant and not the undercover officer acting outside the geographical boundary set out in the Interlocal Assistance Agreement when he obtained this cocaine from the defendant. *See id*. at 823. Judge Price's concurring opinion still would have decided that for Article 38.23(a) state exclusionary rule purposes the defendant lacked standing to complain that the undercover officer illegally obtained (or possessed) the cocaine because "[t]he 'law' in question [that the undercover officer violated] does not shield a person from having his liberty interests infringed, nor were [the defendant's] privacy or property interests implicated by this criminal possession." *See Chavez*, 9 S.W.3d at 823 (Price, J., concurring in the judgment).

It is, therefore, clear that seven judges in *Chavez* decided that a defendant has no standing to complain that evidence was illegally obtained for Article 38.23(a) state exclusionary rule purposes unless the "defendant's personal or property rights are illegally violated in the obtainment of the evidence against him." *See Chavez*, 9 S.W.3d at 823 (Price, J., concurring in the judgment, joined by Meyers, J.) and at 819 (defendant has no standing to complain that evidence was illegally obtained when no invasion of the defendant's rights occurred when it was obtained) (McCormick,

P.J., joined by Mansfield, Keller, Womack and Keasler, JJ.). It is inconsistent with this Court's decisions in *Chavez* and *Fuller* for the majority opinion to state that "Article 38.23 prohibits the admission of evidence obtained in violation of Texas penal laws **related to gathering, creating, or destroying evidence**." *See* Maj. Op. at 9 (emphasis supplied). Consistent with this Court's decisions in *Chavez* and *Fuller*, this statement should read, "Article 38.23 prohibits the admission of evidence obtained in violation of Texas penal laws **when these violations of Texas penal laws violate the defendant's personal or property rights**. Under *Chavez* and *Fuller*, a defendant would have no standing to complain that evidence was obtained in violation of a law "related to gathering, creating, or destroying evidence" if that violation did not violate the defendant's personal rights. The majority opinion effects a major change in Texas law and overrules *sub silentio* significant portions of *Chavez* and *Fuller*.[5]

---

[5]

In *Rakas v. Illinois*, the Supreme Court recognized that "as a general proposition, the issue of standing involves two inquiries: first, whether the proponent of a particular legal right has alleged 'injury in fact,' and, second whether the proponent is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties." *See Rakas v. Illinois*, 439 U.S. 128, 139-40 (1978). Our decisions in *Fuller* and *Chavez* can be read as deciding that the defendants in those cases had no standing to challenge the complained-of action resulting in the acquisition of the evidence used against them because they were basing their claims "for relief upon the rights of third parties."

In *Rakas*, the Supreme Court rejected the "theoretically separate, but invariably intertwined concept of standing" in the Fourth Amendment context. *See Rakas*, 429 U.S. at 139-40. The Supreme Court stated:

We can think of no decided cases of this Court that would have come out differently had we concluded, as we do now, that the type of standing requirement discussed in [citation omitted] and reaffirmed today is more properly subsumed under substantive Fourth Amendment doctrine. Rigorous application of the principle that rights secured by this Amendment are personal, in place of a notion of "standing," will produce no additional situations in which evidence must be excluded. The inquiry under either approach is the same. But we think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment,

Under *Fuller* and *Chavez*, the issue in this case is whether any violation of Section 37.09 by Roberts violated any of appellant's personal rights. Like the "criminal possession" law in *Chavez*, Section 37.09 "does not shield a person from having his liberty interests infringed, nor were appellant's privacy or property interests implicated" by any violation of Section 37.09 by Roberts. *See Chavez*, 9 S.W.3d at 823 (Price, J., concurring in the judgment). Even if, as the majority opinion states, Section 37.09 is intended to prohibit "police officers from using fabricated documents to affect the course of their investigations," it is clear that "[n]o actionable wrong was visited upon"[6] appellant as a result of any violation of Section 37.09 by Roberts and that appellant, like any other member of the general public, has no right to bring suit to enforce Section 37.09 by commencing or compelling the district attorney to commence a criminal prosecution for its violation. *See Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 754, 768 (2005) (private citizen complainant lacked judicially cognizable property interest in police enforcement of restraining order against

---

rather than on any theoretically separate, but invariably intertwined concept of standing. The Court in [citation omitted] also may have been aware that there was a certain artificiality in analyzing this question in terms of standing because in at least three separate places in its opinion the Court placed that term within quotation marks.

It should be emphasized that nothing we say here casts the least doubt on cases which recognize that, as a general proposition, the issue of standing involves two inquiries: first, whether the proponent of a particular legal right has alleged "injury in fact," and, second, whether, the proponent is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties. But this Court's long history of insistence that Fourth Amendment rights are personal in nature has already answered many of these traditional standing inquiries, and we think that definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing.

*See Rakas*, 439 U.S. at 139-40 (citation to authorities and footnotes omitted).

[6]

*See Fuller*, 829 S.W.2d at 202.

complainant's husband who murdered their three children in violation of the restraining order); *Leeke v. Timmerman*, 454 U.S. 83, 85-86 (1981) (private citizen lacks judicially cognizable interest in the prosecution or nonprosecution of another); *Fuller*, 829 S.W.2d at 201 (standing "consists of some interest peculiar to the person individually and not as a member of the general public" and one "who has not suffered an invasion of a legal right does not have standing to bring suit"). That is primarily a call for the district attorney to make. It would, therefore, appear that, in asserting that his confession should be suppressed because of Roberts' alleged violation of Section 37.09, appellant is really asserting the rights of the district attorney to enforce this criminal statute rather than asserting a personal right of his own.[7]

Consistent with this Court's decisions in *Fuller* and *Chavez*, I would decide that appellant's voluntary confession should not be suppressed under Article 38.23(a) because appellant has no standing to complain about any violation of Section 37.09 by Roberts. Excluding the relevant incriminating evidence of appellant's voluntary confession is too high a price to pay for this alleged statutory violation that did not violate any of appellant's personal rights. *See Hudson*, 547 U.S. at 591, 596 (costs of excluding relevant incriminating evidence are considerable). Deciding that appellant has no standing to complain about Roberts' alleged violation of Section 37.09 would have the additional benefits of making it unnecessary for this Court to put Roberts in the same league as

---

[7] Under *Chavez*, it would also seem that, even if appellant had standing to complain about any violation of Section 37.09 by Roberts, his remedy would be to compel a criminal prosecution of Roberts for this violation and not exclusion of his voluntary confession. *See Chavez*, 9 S.W.3d at 819-20 ("And, even if someone like appellant had standing to complain about a breach of the Agreement by one of its parties, the contractual remedy would be specific performance of the Agreement and not exclusion of evidence obtained by police officers acting outside the geographical boundaries set out in the Agreement.").

police officers who use throw-down guns and manufacture evidence to frame innocent people and of declaring Roberts guilty of a third-degree felony offense that Roberts had no opportunity to defend himself against at the suppression hearing[8] and that, as far as this record shows, Roberts has never been formally accused of or prosecuted for violating.

With these comments, I join Judge Keasler's dissenting opinion.


Hervey, J.


Filed: March 3, 2010
Publish

---

[8]

According to the majority opinion, appellant raised Roberts' alleged violation of Section 37.09 for the first time on appeal. *See* Maj. Op. at 6. Roberts, therefore, was not put on notice that he would have to defend himself against this charge at the suppression hearing. This would be a good reason for also deciding that appellant procedurally defaulted any claim that Roberts violated Section 37.09.