NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2314
_____

JANICE S. HAAGENSEN,
                                        Appellant

v.

PENNSYLVANIA STATE POLICE;
CHRISTIAN F. WINTER, CLYDE JONES, TODD SCOTT,
individually and in their official capacity as State Police Officers;
PENNSYLVANIA GAME COMMISSION;
JEFFREY KENDALL, individually and in their official capacity as
State Game Warden also known as JOHN DOE;
NATHANIEL AKINS, and the following individual hunters as
complaining witnesses; GARY FERRIGNO; CATHY VASKO,
also known as CATHY LEARY, also known as CATHY FERRIGNO;
RALPH JOY; MICHAEL McBRIDE; JAY McBRIDE; LESLIE McBRIDE;
BEN SHERRY; JORDAN SNYDER; SHANE SPARKS; GEORGE STEVENISH
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. Civil Action No. 08-cv-0727
(Honorable Donetta W. Ambrose)
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 18, 2012

Before:  SCIRICA, AMBRO and FISHER, *Circuit Judges*.

(Filed: August 2, 2012)
_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Following reversal of her criminal conviction by a state appellate court for violating Pennsylvania's Hunter Harassment Statute, Janice Haagensen filed a civil rights complaint in federal court under 42 U.S.C. § 1983. We will affirm.

I

In December 2001, Haagensen was involved in several verbal altercations with a group of persons who were hunting on, or near, her farm in Lawrence County, Pennsylvania. The Pennsylvania State Police determined the hunters were hunting legally and that Haagensen interfered with their rights, violating Pennsylvania's Hunter Harassment Statute ("HHS"), 34 Pa. Cons. Stat. § 2302, and Criminal Harassment Statute, 18 Pa. Cons. Stat. § 2709.

A state judge found Haagensen guilty of five counts under the HHS, all summary offenses of the second degree.[1] On appeal, the Commonwealth Court reversed because the evidence failed to support a finding she acted with intent to interfere with the lawful taking of wildlife. The court did not address Haagensen's constitutional challenges because the case could be decided on non-constitutional grounds.

---

[1] Haagensen received eight citations as a result of the December incidents. She received five citations for hunter harassment in violation of 34 Pa. Cons. Stat. §§ 2302(a.1), (2), (7) of the Hunter Harassment Statute, and three citations for harassment in violation of 18 Pa. Cons. Stat. §§ 2709(a)(2), (3) of the Criminal Harassment Statute. She was found guilty in a non-jury trial of all five counts under the Hunter Harassment Statute. *See* No. 789 C.D. 2005, 790 C.D. 2005, 791 C.D. 2005, 792 C.D. 2005, and 793 C.D. 2005. One count of harassment was dismissed on April 9, 2002, *see* NT-0000711-01; she was found not guilty of the two remaining harassment charges following trial on March 6, 2004, and March 18, 2005, *see* Common Pleas No. 606 of 2002, and Common Pleas No. 607 of 2002.

Haagensen filed this suit under 42 U.S.C. § 1983, alleging violations of her First and Fourth Amendment rights by several state police officers, the Pennsylvania Game Commission, the state game warden,[2] and several individual hunters. She alleges the HHS is unconstitutional both on its face and as applied to her because it infringes on her First Amendment right of free speech. She also alleges the defendants retaliated against her for exercising her freedom of speech. Furthermore, she claims she was falsely arrested and subjected to malicious prosecution in violation of her rights under the Fourth Amendment. Haagensen also raised various state law claims.[3]

The District Court granted the Commonwealth Defendants' motion to dismiss for failure to state a claim with respect to certain claims.[4] The court granted in part and denied in part defendants' motion for summary judgment.[5] Haagensen's First Amendment retaliatory prosecution claim proceeded to a jury trial. At the conclusion of

---

[2] For convenience, we use the term "Commonwealth Defendants" to refer to the state defendants.

[3] Haagensen alleged the Commonwealth Defendants' actions violated her rights under Article I, §§ 1, 7, and 27 of the Pennsylvania Constitution and alleged state law claims of false arrest, intentional infliction of emotional distress, trespass, negligence, gross negligence, and negligent hiring, training, retention and supervision.

[4] The complaint was referred to a Magistrate Judge who issued a Report and Recommendation on January 5, 2009, and a Supplemental Report and Recommendation on March 3, 2009, that all the claims be dismissed with the exception of the constitutional challenges to the HHS and the criminal harassment statute against the Commonwealth Defendants, the claims of First Amendment retaliation, violation of due process and equal protection, and the state law constitutional challenges to the HHS against the Commonwealth Defendants only.

[5] The Magistrate Judge issued a Report and Recommendation on October 22, 2009, that defendants' motion for summary judgment be granted with respect to the constitutionality of the HHS. On December 14, 2009, the Magistrate Judge recommended that defendants' motion for summary judgment with respect to the due process and equal protection claims be granted and denied with respect to her First Amendment retaliatory prosecution claim.

3

plaintiff's case, the individual hunters moved for judgment as a matter of law under Fed. R. Civ. P. 50, which the District Court granted. Haagensen filed this timely appeal.[6]

## II[7]

Haagensen brings both a facial and as-applied First Amendment challenge to the HHS. We review constitutional claims de novo. *Garcia v. Attorney Gen. of U.S.*, 665 F.3d 496, 502 (3d Cir. 2011).

### A.

A facial challenge to a statute may be sustained if "the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 677 F.3d 519, 537 (3d Cir. 2012) (citing *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973)). If the very existence of the HHS "will inhibit free expression to a substantial extent," we can strike it down. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 246 (2002). But the Supreme Court has stated that facial challenges are "disfavored" and cautioned that "we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (citations omitted). We "will not invalidate a statute on its face simply because it may be applied unconstitutionally, but only if it cannot be applied consistently

---

[6] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343. We have jurisdiction under 28 U.S.C. § 1291.

[7] We exercise plenary review over the District Court's decision to grant summary judgment. Summary judgment is proper only if there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 357 (3d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)).

4

with the Constitution." *Brown v. City of Pittsburgh*, 586 F.3d 263, 269 (3d Cir. 2009)

(quoting *Hohe v. Casey*, 956 F.2d 399, 404 (3d Cir. 1992)) (emphasis deleted).

> The Hunter Harassment Statute provides:
>
> Except as otherwise provided in this title, it is unlawful for another person at the location where the activity is taking place to intentionally obstruct or interfere with the lawful taking of wildlife or other activities permitted by this title.

34 Pa. Cons. Stat. § 2302(a). The statute specifies a person violates the act when he or

she "intentionally or knowingly" commits one of the following eight specified activities:

> (1) drives or disturbs wildlife for the purpose of disrupting the lawful taking of wildlife where another person is engaged in the process of lawfully taking wildlife or other permitted activities;
> (2) blocks, impedes or otherwise harasses another person who is engaged in the process of lawfully taking wildlife or other permitted activities;
> (3) uses natural or artificial visual, aural, olfactory or physical stimuli to affect wildlife behavior in order to hinder or prevent the lawful taking of wildlife or other permitted activities;
> (4) creates or erects barriers with the intent to deny ingress or egress to areas where the lawful taking of wildlife or other permitted activities may occur;
> (5) interjects himself into the line of fire;
> (6) affects the condition or placement of personal or public property intended for use in the lawful taking of wildlife or other permitted activities in order to impair its usefulness or prevent its use;
> (7) enters or remains upon public lands or upon private lands without permission of the owner or their agent, with intent to violate this section; or
> (8) fails to obey the order of any officer whose duty it is to enforce any of the laws of this Commonwealth where such officer observes any conduct which violates this section or has reasonable grounds to believe that any person intends to engage in such conduct.

*Id*. at § 2302(a.1-8).

The statute primarily regulates conduct, as the specified activities constituting a

violation, when done intentionally or knowingly, principally target conduct –

5

intentionally obstructing or interfering with the lawful taking of wildlife.  In this case, the conduct at issue involved blocking, impeding or otherwise harassing another person who is engaged in the process of lawfully taking wildlife.  Harassment may well implicate speech (or conduct akin to speech) and may burden the expression of political opinion— opposition to hunting.  Therefore, we apply First Amendment scrutiny. *See Bartnicki v. Vopper*, 200 F.3d 109, 121 (3d Cir. 1999) ("[W]hen a statute that regulates both speech and conduct is applied to an act of pure speech, that statute must meet the same degree of First Amendment scrutiny as a statute that regulates speech alone.").

The level of First Amendment scrutiny applied depends on whether the HHS is content-neutral or content-based. *Rappa v. New Castle Cnty.*, 18 F.3d 1043, 1053 (3d Cir. 1994).  "If a [restriction on speech] is content-based, then the State is required 'to show that the regulation is necessary to serve a compelling [government] interest and that it is narrowly drawn to achieve that end.'" *Id*. (quoting *Boos v. Barry*, 485 U.S. 312, 321 (1988) (internal marks omitted)). If a statute is content-neutral, we apply intermediate scrutiny, a more lenient test, because "content-neutral [statutes] do not pose the same inherent dangers to free expression … that content-based regulations do." *Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 213 (1997).

The legislature's purpose in adopting a statute is the "controlling consideration" in evaluating whether a statute is content-neutral. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).  The HHS is content-neutral if it "serves purposes unrelated to the content of expression … even if it has an incidental effect on some speakers or messages but not others." *Id*. at 791-92.  The government can "impose reasonable restrictions on

6

the time, place, or manner of protected speech, provided [1] the restrictions 'are justified without reference to the content of the regulated speech, [2] that they are narrowly tailored to serve a significant governmental interest, and [3] that they leave open ample alternative channels for communication of the information.'" *Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 388 (3d Cir. 2010) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)) (further citation omitted).

Assuming anti-hunting advocacy forms the basis of a possible harassment violation, the HHS regulates only the time, place, and the manner where such speech may occur. The statute applies only when harassment intentionally obstructs or interferes with "lawfully taking wildlife or other permitted activities." There is nothing in the statute that prevents a person from expressing opposition to hunting in a variety of other manners, such as speaking or protesting in public places (e.g., the state capitol) or posting signs on their private property; it only prevents a person from "intentionally obstruct[ing] or interfer[ing] with the lawful taking of wildlife." Furthermore, the statute applies to all persons and does not single out the views of those opposed to hunting. The statute's purpose is unrelated to the suppression of anti-hunting sentiment, but seeks only to protect public safety, regulate wildlife, and protect the lawful activity of hunting. Because the HHS only restricts the time and place of speech and leaves open a multitude of alternative means for a person to convey opposition to hunting, the statute is content-neutral.

Because the HHS imposed only content-neutral restrictions on speech, intermediate scrutiny applies. *Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 677 F.3d

7

519, 535 (3d Cir. 2012). The HHS will survive intermediate scrutiny if it: (1) advances a "substantial" governmental interest (preserving public safety and managing wildlife); (2) does not "burden substantially more speech than is necessary" (the statute is narrowly tailored); and (3) leaves open "ample alternative channels for communication." *Id.* (quoting *Ward*, 491 U.S. at 791). These standards are met in this facial challenge.

*1.*

We will strike down a regulation of speech on its face "if its prohibitions are sufficiently overbroad—that is, if it reaches too much expression that is protected by the Constitution." *DeJohn v. Temple Univ.*, 537 F.3d 301, 314 (3d Cir. 2008). A statute is overbroad if "a substantial number of its applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep." *United States v. Marcavage*, 609 F.3d 264, 273 (3d Cir. 2010).

Haagensen contends the HHS is unconstitutionally overbroad because it criminalizes constitutionally protected speech and "sweeps too widely to be limited only by prosecutorial discretion." In adopting the Magistrate Judge's Report and Recommendation, the District Court held the overbreadth challenge failed because the statute has several valid applications, there is little likelihood of impermissible applications, and the state has an interest in regulating activity that knowingly and intentionally interferes with lawful hunting. We agree.

As noted, the HHS prohibits a person from "intentionally or knowingly" interfering with the lawful activity of hunting, specifying eight activities that would violate the statute if committed "intentionally or knowingly." The speaker's scienter

8

requirement prevents the statute from reaching a "substantial" amount of constitutionally protected speech. Haagensen failed to provide any examples of constitutionally protected speech falling under the statute. Furthermore, the statute advances several significant government interests, including preserving public safety and managing wildlife. For these reasons, we reject Haagensen's overbreadth challenge.

*2.*

A statute is void for vagueness "if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972), and if the "party does not have actual notice of what activity the statute prohibits." *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1266 (3d Cir. 1992).

Haagensen argues the HHS is unconstitutionally vague because it fails to define the term "harass" in the context of the statute and therefore criminalized constitutionally protected speech. The District Court disagreed, finding the HHS contained a specific intent requirement and specified the particular conduct that violates the act. In reaching this conclusion, the District Court drew on the Pennsylvania legislature's definition of "harassment" in 18 Pa Cons. Stat. § 2709,[8] finding the term specifically defined and

---

[8] Section 2709 provides that a person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person:
>     (1) strikes, shoves, kicks or otherwise subjects the other person to physical contact, or attempts or threatens to do the same;
>     (2) follows the other person in or about a public place or places;
>     (3) engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose;
>     (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures;
>     (5) communicates repeatedly in an anonymous manner;

9

limited in scope which ensured it did not inhibit constitutionally protected speech. Under Pennsylvania law, § 2709 requires a finding of "specific intent" and applies only if a person's actions consist solely of "non-legitimate nature-conduct which is not constitutionally protected." *Commonwealth v. Miller*, 689 A.2d 238, 242 (Pa. Super. Ct. 1997). Because the state courts have interpreted "harassment" consistent with the usage in § 2709, the District Court found the HHS was not unconstitutionally vague on its face. The HHS prohibits a person from "intentionally obstruct[ing] or interfere[ing] with the lawful taking of wildlife" and specifies eight activities that violate the statute. The Pennsylvania Superior Court's construction of "harass" to comport with the criminal offense of harassment under 18 Pa. Cons. Stat. § 2709(a) ensures the HHS does not inhibit constitutionally protected speech. We agree with the District Court that the statute is not unconstitutionally vague.

*B.*

Haagensen contends the District Court erroneously found her as-applied challenge to the criminal harassment statute, 18 Pa. Cons. Stat. § 2709, time barred. Section 1983 claims are subject to Pennsylvania's two year statute of limitations for personal injuries. 42 Pa. Cons. Stat. § 5524. Haagensen filed suit on May 27, 2008.

Haagensen's § 1983 claims accrued on June 2, 2006, the date her conviction for violating the HHS was overturned. *Heck v. Humphrey*, 512 U.S. 477, 489-90 (1994). Haagensen contends her criminal harassment conviction under § 2709 was overturned

---

(6) communicates repeatedly at extremely inconvenient hours; or
(7) communicates repeatedly in a manner other than specified in paragraphs (4), (5) and (6).

less than two years before she filed suit. But the facts establish otherwise. The Commonwealth court's opinion on June 2, 2006 addressed only her hunter harassment conviction, not her criminal harassment conviction. On August 9, 2002, one charge of harassment under § 2709 was dismissed; she was acquitted of one charge of harassment under § 2709 on May 6, 2004, and another charge on March 18, 2005. Haagensen has presented no evidence the District Court erred in finding that all the criminal harassment charges were resolved in her favor prior to May 27, 2006. We will affirm the District Court's grant of the Commonwealth Defendants' summary judgment motion, as the as-applied challenge was untimely.

III[9]

*A.*

Haagensen argues the court erred in dismissing her malicious prosecution claim. Haagensen contends she was seized for purposes of the Fourth Amendment because her criminal citations required her to make court appearances and pay a monetary fine. But "[a]ttending one's trial is not a government seizure in a 42 U.S.C. § 1983 malicious prosecution action." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005). The District Court correctly found no seizure and properly granted the Commonwealth Defendants' motion to dismiss.

---

[9] We review *de novo* the grant of defendant's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). We accept as true all well-pled factual allegations. *Santiago v. GMAC Mortg. Gr., Inc.*, 417 F.3d 384, 386 (3d Cir. 2005).

11

*B.*

Haagensen argues her claim against Game Warden Kendall was incorrectly dismissed because he denied her "access to the courts" when he failed to file criminal charges against the hunters and "intimidated" her by questioning her in the company of the hunters. But Haagensen does not have a "judicially cognizable interest in the prosecution or nonprosecution of others." *Leeke v. Timmerman*, 454 U.S. 83, 85-86 (1981). Furthermore, Haagensen failed to allege that Kendall personally participated in bringing "false charges." Liability can be established only through personal involvement, "personal direction," or by "actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Haagensen failed to allege Kendall's personal involvement, personal direction, or actual knowledge and acquiescence in bringing false charges. The District Court was correct to grant the motion to dismiss for failure to state a claim for which relief can be granted.

IV

*A.*

Haagensen contends the court erred in admitting "hearsay" testimony by the state police defendants as to the hunters' out-of-court statements.[10] The court allowed the testimony because it went "to their understanding of the incidents as it impacted their motives for issuing the citations." We agree the testimony was not hearsay because it

---

[10] "Whether a statement is hearsay is a legal question subject to plenary review." *United States v. Price*, 458 F.3d 202, 205 (3d Cir. 2006).

was not admitted for the truth of the matter asserted, but rather as evidence of the officers' state of mind. Fed. R. Evid. 801(c).

*B.*

Haagensen claims the court erred in granting the individual hunters' motion for judgment as a matter of law because she provided sufficient proof they "acted in concert with state actors" to initiate the prosecution.[11] Haagensen can only prevail if she proved the individual hunters conspired with state actors to initiate a false prosecution. But she presented no evidence of a conspiracy or agreement between the hunters and the state actors. The District Court properly granted the individual hunter defendants' motion for judgment as a matter of law.

*C.*

Haagensen contends the court erred in granting the motion to clarify the docket because no federal rule permits the court to do so. It is well established that "[i]nherent power has been frequently invoked by the courts … to provide tools for docket management." *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 561 (3d Cir. 1985). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citing *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). Included among these powers is "the power to manage their dockets." *In re Orthopedic "Bone Screw" Products Liab. Litig.*, 132 F.3d 152, 156

---

[11] We exercise plenary review of the District Court's order granting judgment as a matter of law and apply the same standard applied by the District Court. *Pitts v. Delaware*, 646 F.3d 151, 155 (3d Cir. 2011).

13

(3d 1997).  There was no abuse of discretion in granting the Commonwealth defendants' motion to clarify the docket.  It did not prejudice Haagensen and allowed the jury to efficiently consider the matter.

*D.*

Haagensen raises several trial errors for the first time on appeal.  We review for plain error,  i.e., whether "the District Court plainly erred in such a way as to affect the appellant's substantial rights." *United States v. Albertson*, 564 F.3d 191, 196 (3d Cir. 2011) (citing Fed. R. Crim. P. 52(b)).  Haagensen contends the court erred in three respects: (1) denying her request for a general jury verdict; (2) submitting the issue of probable cause to the jury; and (3) denying her due process by entering a stay order with respect to Cathy Vasko's petition in bankruptcy.  Because none of the District Court's rulings was erroneous, much less satisfies the burden of plain error (derogation of substantial rights and prejudice), Haagensen is not entitled to relief.[12]

V

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[12] Furthermore, Haagensen's brief failed to comply with Fed. R. App. P. 28(a)(9)(A) and 3d Cir. LAR 28.3(c) by failing to include citations to the record or to relevant legal authority to support her arguments that the District Court erred.  "[A]n argument consisting of no more than a conclusory assertion … (without even a citation to the record) will be deemed waived." *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997).