**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4132
_____

LORI PARKER,
                                        Appellant

v.

COUNTY OF BERGEN, NEW JERSEY, including representatives, employees, and
agents therein, in both their official and individual capacities, and including those whose
identities are unknown; BERGEN COUNTY SURROGATES COURT, BERGEN
COUNTY, NEW JERSEY, including representatives, employees, and agents therein, in
both their official and individual capacities, and including those whose identities are
unknown; SURROGATE MICHAEL R DRESSLER, Bergen County, New Jersey in both
his individual and official capacity; THERESA S. DOYLE, in both her individual and
official capacity; MICHELLE CHO, in both her individual and official capacity; JANE
DOES 1-10 in their individual and official capacities, whose identities are unknown;
JOHN DOES 1-10 in their individual and official capacities,
whose identities are unknown
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 2-16-cv-04768)
District Judge: Honorable Susan D. Wigenton
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 16, 2017

Before: AMBRO, KRAUSE and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed: June 19, 2017)

———————

OPINION[*]

———————

PER CURIAM

Lori Parker appeals the District Court's dismissal of a suit against the Bergen County Surrogate's Court ("Surrogate's Court") and several of its employees. We will affirm the District Court's judgment.

Parker, a party in a dispute over a will that her aunt executed two days before she died and which disinherited Parker, filed suit complaining of record tampering by the Surrogate's Court and its employees. She specifically alleged that certain filings, including her response to the estate's motion for summary judgment and her aunt's medical records (she had subpoenaed them to support her own motion for summary judgment), were either removed from the official judicial record or entered into the record after the New Jersey trial judge held a hearing on the motions for summary judgment.[1]

The District Court reviewed Parker's complaint pursuant to 28 U.S.C. § 1915(e)(2), dismissed it without prejudice as time-barred, and allowed her to amend her complaint. She filed an amended complaint, which the District Court again dismissed

———————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The trial judge ultimately granted the estate's motion for summary judgment, the decision was upheld on appeal by the New Jersey Superior Court, Appellate Division, and the Supreme Court of New Jersey denied Parker's petition for certification. See In re Estate of Blair, Dkt. No. A-5482-13T1, 2015 WL 9942215 (N.J. Super. Ct. App. Div. Feb. 1, 2016) (per curiam), cert. denied, 147 A.3d 445 (Table) (N.J. July 15, 2016).

2

pursuant to § 1915(e)(2) as time-barred, this time without leave to amend because any such amendment would be futile. She timely appealed.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. See Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). We exercise plenary review over the District Court's order dismissing the complaint. Id. at 223. We may affirm a district court for any reason supported by the record. Brightwell v. Lehman, 637 F.3d 187, 191 (3d Cir. 2011).

When screening a complaint under § 1915, a district court may sua sponte dismiss the complaint as untimely under the statute of limitations if the defense is obvious from the complaint and no development of the factual record is required. See Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir. 2006); Eriline Co. S.A. v. Johnson, 440 F.3d 648, 656-57 (4th Cir. 2006); Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995). In a § 1983 action the statute of limitations is taken from the state's personal injury statute. Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993). In New Jersey, the statute of limitations for personal injury claims is two years. See N.J. Stat. Ann. 2A:14-2. The limitations period begins to run "when the plaintiff knew or should have known of the injury upon which its action is based." Sameric Corp. v. City of Phila., 142 F.3d 582, 599 (3d Cir. 1988).

The District Court found that the statute of limitations began to accrue in February 2014. That is when, according to Parker's own allegation, "certain irregularities appeared [] to begin occurring," specifically that a Surrogate's Court employee "stated she was refusing to file the subpoena and proof of service certifying the notary of the []

3

Will [] had been served." Doc. No. 5 at ¶ 30. On August 5, 2016, two years and six months later, Parker filed her complaint. Parker argues, however, that her complaint was timely because her claims did not begin to accrue until either August 8, 2014 or late November 2014. It was on August 8, 2014 that Parker accessed the Surrogate Court's microfilm records and learned, in her estimation, that the medical records had not been filed into the judicial record, and that her response to the estate's motion for summary judgment had been entered into the record after the hearing. Id. at ¶¶ 48-51. And it was not until late November 2014 that Parker received what she characterizes as a "confirmed docket sheet" from the Surrogate's Court, showing the same. Id. at ¶ 55.

But the face of Parker's amended complaint belies her assertion that she did not become aware of the alleged records tampering until she received a copy of the docket sheet in November 2014. And the Surrogate Court employee's stated refusal in February 2014 to properly file the subpoena and proof of service is not the only indicator that Parker was aware of any purported malfeasance before August 5, 2014 (two years before she filed this suit). In early May 2014, she received a box from the Surrogate's Court with medical records that were meant to be "filed directly into the Record" in support of her April 2014 motion for summary judgment. Id. at ¶ 33. And on June 7, 2014, Parker "faxed a confidential letter to [the] Judge [] about her concerns that [a Surrogate's Court employee] might have suppressed the medical records from the trial court," which also "explained her concerns about whether it was safe to file things with the Surrogate's Court." Id. at ¶ 37. Not only did Parker continue her correspondence with the trial judge

4

throughout June and July,[2] but during that time she also contacted the Surrogate's Court on several occasions with similar concerns. Id. at ¶¶ 38-47. The District Court, therefore, correctly concluded that Parker's claims were untimely.[3]

Further, even if her complaint had been timely, we are doubtful that it states any claim upon which relief could be granted, as Parker fails to allege any constitutionally cognizable injury arising from the alleged filing issues. To recover under § 1983, "a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." See Elmore v. Cleary, 399 F.3d 279, 281 (3d Cir. 2005). And a complaint is properly dismissed where, as here, it does not "set out 'sufficient factual matter' to show that the claim is facially plausible." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Even if Parker's summary judgment response or the medical records were mishandled, Parker did not suffer the type of harm necessary to state a viable claim under § 1983. As for the summary judgment response, the judge who granted the estate's summary judgment motion indicated that "the Court in fact did have [Parker's] response and considered it prior to the hearing on April 15, 2014." Appellant's Supp. App'x at 4-

---

[2] Parker notes that exhibits in sealed manila envelopes, which were meant to support a motion for reconsideration, were returned to her in July, apparently unopened. Id. at ¶ 41.

[3] For the same reasons, Parker's state law claims were also time-barred.

5.[4]  As for the medical records,[5] even if the Superior Court did not look at them (which is not clear), we doubt that the Court had the duty to comb through bulk records sent directly from the medical facilities.  In any event, the Court denied relief not because of a lack of medical records, but because Parker had "*failed to produce an expert's report* to support the premise that either decedent's illness, the pain she was experiencing, or the effects of the pain medication affected decedent's cognition."  Estate of Blair, 2015 WL 9942215, at *1 (emphasis added).  And Parker has not explained how she was prejudiced by the court's alleged failure to consider exhibits in support of her motion for reconsideration.[6]  Thus, Parker's due process right to notice and an opportunity to be heard were not affected by any purported irregularities in filing.  See Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (to establish a procedural due process

---

[4] We admonish Parker for initially presenting only a misleading "excerpt" from this opinion.

[5] Parker claims that the records would have shown that her aunt was heavily medicated, and thus lacked testamentary capacity.

[6] In denying Parker's motion to settle the record, the Court commented on Parker's allegations that the Court had not considered her response and her exhibits.  As for the summary judgment decision, the Court quoted its decision on Parker's first motion for reconsideration, in which it advised Parker that "the facts that the Petitioner alleges were overlooked by the Court, were in fact considered but rejected as non-corroborated." Appellant's Supp. App'x at 4 (internal quotation marks omitted).  And as for the exhibits to the motion for reconsideration, the Court stated:  "In Petitioner's second motion for reconsideration the Court identified two sealed manila envelopes that Petitioner said she mailed in with her first motion for reconsideration which she wanted the Court to review. The Court pointed out in its August 4, 2014 Order that this information was not shown to be [a] 'game-changer' to warrant reconsideration; nor did the Petitioner show (once again) how the new evidence was significant to the facts before the Court." Id.

claim, plaintiff must show that available procedures did not provide her with due process of law).

Finally, Parker's complaint included several claims under federal criminal statutes, but a private party has no right to enforce criminal statutes. See Leeke v. Timmerman, 454 U.S. 83, 85-86 (1981) (per curiam). And as for the "Constitutional Issues" referenced in her complaint, see Dkt. #5 at 28, the allegations are wholly without merit. First, N.J. Court R. 2:5-4(b) applies only in agency cases.[7] As Parker was not involved in an agency case, she lacks standing to challenge the Rule. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 103 (1998). And her argument that Rule 1:5-6(b)(5) is "unconstitutional, as it allows two judicial courts to oversee and act in a judicial capacity over a litigant's case," has no legal or factual basis.[8] Parker has not explained why requiring a litigant to file a paper with the Surrogate's Court would violate the Constitution in any way.

Consequently, we will affirm the judgment of the District Court.

---

[7] "Notice of Agency Record. Within 30 days of the service upon it of the notice of appeal the agency or officer from which the appeal is taken shall file in the appellate court a statement of the items comprising the record on appeal and shall serve a copy thereof on each party to the appeal." R. 2:5-4(b).

[8] That Rule simply provides that a paper should be filed "In probate matters in the Surrogate's Court, with the Surrogate, and in actions in the Chancery Division, Probate Part, with the Surrogate of the county of venue as deputy clerk of the Superior Court." R. 1:15-6(b)(5).